By the terms of the certificate of membership the defendant obligated itself to pay to the heirs or legal representatives of the assured the sum payable on the policy "within sixty days after due notice and satisfactory proof of the death (during the continuation of the contract) of the said John Roberts." There is no requirement that the cause of death shall be communicated to the association by a claimant, nor under the policy could this be exacted. The beneficiary of the policy performed his entire legal obligation under the contract when he gave the association due notice of the death of the insured, and furnished proof that the death has, in fact, occurred. The words "satisfactory proof" entitled the association to demand that the fact of death should be shown with reasonable definiteness and certainty, and if the proofs furnished failed to satisfy the association of the fact of the death, the association acting reasonably and in good faith could require further evidence. But the insurer cannot under guise that the requirement *Page 454 
that "satisfactory proof" of the death of the assured should be given, demand information of the cause of the death. This would be a different subject. The information, however important it might be in its bearing upon a death from the excepted causes, nevertheless has no relation to the one fact which alone the claimant is bound to embrace in his proofs. (See Grattan v.Metropolitan Life Ins. Co., 80 N.Y. 281; Ins. Co. v. Rodel,95 U.S. 232.)
The guardian of the infant plaintiff in furnishing to the defendant, as part of the proofs, the certificate of the attending physician of the insured, did a wholly gratuitous act. If it can be treated as an admission by the infant beneficiary that the death was from the cause so certified, it is plain that the act was extremely prejudicial to the interest of his ward, for upon that assumption the infant, the real plaintiff, has substantially admitted away his cause of action.
The trial judge, upon the proofs being offered in evidence by the defendant, refused to permit the certificate of the physician to be read, and this ruling presents the main question in the case. There are two aspects under which the ruling may be considered: First, was the certificate inadmissible under section 834 of the Code of Civil Procedure, which declares that "a person duly authorized to practice physic or surgery shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity and which is necessary to enable him to act in that capacity;" and second, assuming that the statute does not apply to the case and that the certificate would be competent as an admission of the fact certified, if the proofs had been furnished by an adult claimant, can the act of the guardian in this case be treated as an admission by the infant beneficiary of the same fact.
Section 834 is a re-enactment of a similar section in the Revised Statutes. (2 R.S. 406, § 73.) It is contained in the chapter of the Code relating to evidence, and in the article in that chapter entitled: "Competency of a witness; evidence in particular cases." The primary purpose of the section was to declare the rule governing the examination of a *Page 455 
physician as a witness in judicial proceedings. The three sections, 834, 835 and 836, relate respectively to disclosures by clergymen, physicians and attorneys, and section 837 declares that "the last three sections apply to every examination of a person as a witness, unless the provisions thereof are expressly waived by a person confessing the patient or the client." The disclosure by a physician of information acquired in his professional character in attending a patient, where not made in the course of his professional duty, is a plain violation of professional propriety. But the statute does not prescribe a rule of professional conduct for the government of physicians in their general intercourse with society. The common law did not protect a physician from disclosing as a witness information acquired professionally from patients. (1 Green. Ev. § 248.) The statute was intended to afford this protection and to protect the patient also. If a physician, disregarding the plain obligations of his situation, should, in conversation, disclose the secrets of his patient, he would, so far as we know, violate no statute, however reprehensible his conduct would be. The statute should have a broad and liberal construction to carry out its policy. By reasonable construction it excludes a physician from giving testimony in a judicial proceeding in any form, whether by affidavit or oral examination, involving a disclosure of confidential information acquired in attending a patient, unless the seal of secrecy is removed by the patient himself. The verified certificate of the physician which accompanied the proofs of loss was not competent original evidence of the cause of the death of the insured, nor was it offered as testimony of the physician as to that fact. The fact that the insured died of delerium tremens was material to the defense. The admission of a party in interest is as a general rule competent evidence against him. The presentation of the physician's certificate that the deceased died from the cause stated, operated as an admission by the guardian that the fact was as stated. It derived its force from the fact that the claimant communicated to the defendant a statement of the cause of death, which, if true, vitiated the policy. The statement was embodied in a *Page 456 
physician's certificate. If it had been contained in the guardian's own statement, or that of any non-professional person, it would equally have been an admission of the fact stated. The certificate was a part of the proofs furnished. Its admission in evidence violated no confidence. The confidence had already been violated by the conjoint action of the physician and the guardian. It was not offered as independent evidence of any fact in the case, but in connection with the circumstances of its transmission to the company, as an admission that the fact alleged was true. It was held in Insurance Co. v. Newton (22 Wall. 32), that preliminary proofs presented to an insurance company under a provision in a policy, as to the proof of death, substantially like that in the present case, were admissible asprima facie evidence of the facts stated therein against the insured and in behalf of the company. The case of Goldschmidt
v. Mutual Life Ins. Co. (102 N.Y. 486) is not in conflict. In that case the question was whether the record and verdict of a coroner's inquest, finding the fact of suicide, furnished by the claimant with the proofs at the request of the company, but which was accompanied with a protest that the fact found was not true, was an admission by him that the insured died by his own hand, and the court very properly held that it was not. We think the admission in the case was not incompetent because made through the medium of the certificate of the attending physician.
The other ground for excluding the certificate, viz.: That the infant was not bound by the admission of the guardian, is, we think, well taken. The defendant, upon the request of the guardian, furnished blanks for the proofs, including a blank certificate of the attending physician as to the cause of the death, which were filled in by the guardian and signed and verified by the several persons whose certificates were required, and returned to the company. The office of a guardian is one of trust. He is empowered to act for the ward in the matters confided to him as guardian, in furtherance of his interests. Under the law of agency the admissions of an agent, made within the scope of his powers, are admissible in connection *Page 457 
with some res gestæ, to bind the principal. But the admission must be relevant to the matter in hand and accompany the transaction to which it relates. (Thallhimer v. Brinckerhoff,
4 Wend. 394.) The power of a guardian to bind his ward by his admissions is more limited than that of an agent acting for an adult principal. The court will not permit the rights of a ward to be prejudiced by the admission of a guardian. His interests are under the protection of the court and it will intervene to relieve the ward from prejudicial conduct on the part of the guardian. It is a settled rule in chancery that where the infant defends by guardian, his rights are submitted to the court and he is not bound by admissions in the answer, and the court will not render a decree against the infant solely upon such admissions. (Wrottesley v. Bendish, 3 P. Wms. 235; Bank of U.S. v.Ritchie, 8 Pet. 128; Cooper v. Mayhew, 40 Mich. 528;Ralston v. Lahee, 8 Iowa 17; Massie v. Donaldson,8 Ohio, 377; Turner v. Jenkins, 79 Ill. 229.) In the present case, the guardian, in furnishing the physician's certificate, did an act not required by the contract of insurance. Whatever was necessary to be done to enable the guardian to put himself in a position to prosecute the claim, he was authorized to do. There is no ground for impeaching the good faith of the guardian in furnishing the certificate. He probably supposed that the company had the right to exact it. The company, in remitting the blanks, requested him to fill them up, and what he did was in compliance with its request. In procuring the physician's certificate, the guardian misapprehended his duty. It was an act tending to defeat the claim which he had undertaken to collect. The fact asserted in the certificate may have been the truth. But the guardian had no right to foreclose inquiry upon the subject, nor to prejudice the case by changing the burden of proof by an inconsiderate, unnecessary and prejudicial admission. (See Serle v. St.Eloy, 2 P. Wms. 386; Flight v. Bolland, 4 Rus. 298; Hanna
v. Spott's Heirs, 5 B. Mon. 362; Whart. on Ev. § 1208; McPherson on Infants, p. 83.) *Page 458 
The offer of the defendant to show that, by the rules and regulations of the defendant, the certificate of the attending physician of the insured, in case of death, was required to be furnished as part of the proofs, was properly rejected. There is nothing in the contract or in the by-laws of the defendant requiring this, nor was it claimed that if such a rule existed, it ever came to the knowledge of the assured. In the absence of any usage known to him, or of any requirement in the policy that the certificate of the attending physician should be furnished as part of the proofs of death, it could not be required. (Taylor
v. Ætna Life Ins. Co., 13 Gray, 434.)
The court also properly excluded the records of the board of health of the city of Buffalo and the certificate of the attending physician filed with the board, stating the cause of death of the insured. The statute (Laws of 1870, chap. 519, tit. 12, § 10, subd. 5) makes it the duty of the board of health of Buffalo to supervise the registration of deaths and causes of death in the city, and prescribes that no burial of a deceased person shall take place until a certificate shall have been made and presented of the death and its cause, if known, and that a refusal on the part of any person whose duty it is to make out and file for registration any such record, shall be a misdemeanor. The ordinances of Buffalo also make it the duty of the attending physician to furnish a certificate setting forth the cause, date and place of death of any person in the city, and file the same in the office of the board of health. The statute and ordinance were police regulations, and the records were required for local and specific purposes, and are not public records in such sense as makes them evidence between private parties of the facts recorded. We have found no case which would justify their admission in a controversy between private parties as evidence of the cause of death recently happening, where that became a material inquiry.
We find no error in the judgment, and it should be affirmed.
All concur.
Judgment affirmed. *Page 459