THERESA MARIA LUND, Plaintiff, *v.* MASONIC LIFE ASSOCIATION OF WESTERN NEW YORK, Defendant.

*Life insurance policy — expert testimony — proof of death — competent evidence against the beneficiary.*

It does not require expert testimony to describe a boil or wound or to tell where it is located or whether suppuration has taken place.

Where a witness has had twenty-one and a half years' experience as a nurse in a general hospital, in which he has attended upon the surgical operations which have taken place upon the men in the hospital during that time, he is sufficiently qualified to testify that a person was operated upon in his presence who had a suppurating abcess in the perineal section; that the doctor made three incisions in the perineal region and cut the abscess and uretha down to the bladder, and that subsequently the patient was again operated upon for contraction or constriction of the uretha.

In an action brought upon a life insurance policy, the proof of death of the insured, as made by the beneficiary, who was of full age, or by her direction, and forwarded to the insurer, is properly received in evidence upon the trial, and the statements contained therein, in the absence of proof that they are false, incorrect or unauthorized, must be regarded as the admissions of the beneficiary and competent evidence against her.

MOTION by the plaintiff, Theresa Maria Lund, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance, upon the verdict of a jury rendered by direction of the court after a trial at the Erie Circuit on the 12th day of October, 1893.

*George W. Cothran*, for the plaintiff.

*Daniel H. McMillan*, for the defendant.

HAIGHT, J. :

This action was brought upon two certificates issued by the defendant to Henning D. Lund in his lifetime, in which the defendant undertook to pay to the plaintiff as the wife of Lund the sum of $2,000, upon the certificate issued in class B, and the sum of $3,000, upon the certificate issued in class C, upon satisfactory proofs of his death, payments to be made by the association by an assessment upon its members, levied in accordance with its by-laws. The certificates were dated June 23, 1890.

Upon the trial it was conceded that an assessment under the first certificate would have realized the amount thereof, and that an assessment under the second certificate would have realized $1,734.90. Lund died at the Buffalo General Hospital in the city of Buffalo on the 11th day of May, 1891. The defense interposed was false and fraudulent statements of the assured in his application, by which the association was misled and induced to issue to him the certificates. In his application he stated : " I am correct and temperate in my habits, and to the best of my knowledge and belief have no injury or disease, constitutional or otherwise, that will tend to shorten my life ; am now in good health and able to gain a livelihood, and I promise, if accepted, to conform in all respects to the by-laws, rules and regulations now in force or which may hereafter be adopted by the association or its board of directors." In answer to the question whether he had ever had stricture, he answered " No." To the question, " Have you ever had any serious personal injury, or undergone any surgical operation ? " he answered, " Yes ; " that he was shot in the knee and the shell lodged there ; that he was in the hospital seven weeks, but that it did not trouble him at the time of his application.

The plaintiff in her proofs of death states that he " had operation at hospital about three years ago ; was there one week ; had operation for something about his water ; was well when he went to the hospital except what he told me was a rupture." And in answer to the question of, " What was the immediate cause of death ? " answered, " I think he died from the operation. Was at the hospital from Friday till Monday, the 11th of May." As a part of the proofs of death she furnished a certificate of the attending physician at the time of his death, who states that the deceased was afflicted with a chronic disease of the urinary organs ; that on the 9th day of May, 1891, he " dilated an old cicatrix made about two years before in an external urethrotomy ; he became comatose following convulsions and died on the 11th. Post mortem showed extensive disease of the bladder, uretha, kidneys and brain."

Upon the trial the application was introduced in evidence by the defendant, and exception was entered by the plaintiff to its reception. We think that the evidence establishes that it was his application. Tiffany, the general agent and secretary of the defendant, identified

the application as the one upon which the certificates were issued. Leonard, his clerk, testified that the application was filled out in his handwriting, and that he saw Lund sign his name thereto, but that he had never seen him but at that time and had no knowledge that he was the Lund now in controversy. But Brown, the physician and surgeon, who examined him for his insurance, testified that Lund brought the application to him with his name subscribed thereto, and that he added thereon his examination and certified his approval thereto, thus conclusively identifying the individual and his application.

Joseph Winters was sworn as a witness for the defendant, and testified that he resided in Buffalo and had for nine and a half years, and that during all of that time he had been connected with the Buffalo General Hospital as an attending orderly; that he attended the surgical operations on the men that were carried on there during that time, and that he had hospital experience in Germany for over twelve years before coming here; that in February, 1888, Henning D. Lund was a patient in the hospital and was operated upon surgically by Dr. Park; that he was present at the operation; that there was a suppurating abscess in the perineal section; that Dr. Park made three incisions, cut the abscess and the uretha down to the bladder; that the incisions were made in the perineal region; that he had a talk with the patient and he said that he was operated upon two years before in the old country; that he prepared the patient for the operation; and that at that time Lund said to him he had an abscess and a stricture; that the patient subsequently left the hospital, and again returned in 1891, and was again operated upon for contraction or constriction of the uretha; and that in a few days thereafter he died at the hospital. Objections and exceptions were taken by the plaintiff to much of the evidence of this witness, upon the ground that he was not a physician and not competent to testify as an expert. But it will be observed most of his testimony pertains to what was done in his presence. It is true, he speaks of a suppurating abscess, and tells where it was located, but this any witness could describe as well as a physician. It does not require an expert to describe a boil or a wound and tell where it is located, or whether suppuration has taken place.

In the last operation he states it was for contraction or constriction of the uretha. It possibly may be said that this answer could have been made only by an expert. We do not regard it as very material, for it has reference to the last operation just preceding his death, and it does not necessarily tend to show that he had stricture or a surgical operation before the application for insurance was made. But, assuming it to be material, we are inclined to the view that a new trial ought not to be granted because of the admission of this evidence. For we think that the witness' experience of twelve years in Germany and nine and a half years in this country as a nurse in the General Hospital, in which he attended upon the surgical operations produced upon the men in the hospital during that time, sufficiently qualified him to give the testimony objected to.

Again, it is contended that the proofs of death, including the physician's certificate, ought not to have been received in evidence. But the plaintiff was of full age, acting for herself, and the proofs were such as were made out by her or by her direction, and forwarded to the association. No claim is made that any of the statements made in the proofs of death are false or incorrect, or that they were unauthorized. We think, therefore, that they must be regarded as her admissions, and competent as evidence against her.

This question has been recently fully considered in the case of *The Buffalo Loan, Trust & Safe Deposit Co.* v. *The Knights Templar and Masonic Mutual Aid Association* (126 N. Y. 450, 455), in which ANDREWS, J., in delivering the opinion of the court, says that: "The presentation of the physician's certificate that the deceased died from the cause stated, operated as an admission by the guardian that the fact was as stated. It derived its force from the fact that the claimant communicated to the defendant a statement of the cause of death which, if true, vitiated the policy. The statement was embodied in a physician's certificate. If it had been contained in the guardian's own statement, or that of any non-professional person, it would equally have been an admission of the fact stated. The certificate was a part of the proofs furnished." It is true, in that case, the court finally held that the beneficiary, being an infant, was not bound by the admissions of its guardian, and for that reason the court sustained the recovery. But, as we understand the case, it was distinctly held that in case the beneficiary had been

an adult he would have been bound by the admission contained in the proofs of death.

The motion for a new trial should be denied, with costs, and judgment ordered for the defendant upon the verdict.

DWIGHT, P. J., LEWIS and BRADLEY, JJ., concurred.

Plaintiff's motion for a new trial denied, with costs, and judgment ordered for the defendant upon the verdict.