J. CRAWFORD MARMADUKE et al., Appellants, v. JOSEPH E. MARTIN et al., Respondents.

St. Louis Court of Appeals, December 3, 1901.

1. **Contract, Construction of.** In the case at bar, in the formal application for the loan furnished by the insurance company and signed by the defendant under the head of "title" is the following: "This company accepts only such titles as are perfect of record . . . . . Upon receiving at this office the abstract and attorney's certificate of perfect title above mentioned, this company's counsel at the home office will examine the papers and upon finding them satisfactory will prepare the bond and mortgage."

2. ———: ———. And this obligation of defendants, under their agreement, was to furnish a perfect title of record satisfactory to the counsel of the insurance company—a title which did not disclose a

patent defect suggesting the possibility of a lawsuit to defend it, but a title safe to a moral certainty.

3. ———: ———: RECORD. And so far as the record discloses in the case at bar, the defendants furnished a perfect title of record and in this respect complied with their contract, and the plaintiffs through the fault of their customer, were prevented from complying with theirs, and for this reason are not entitled to their commission.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

Plaintiffs are loan brokers doing business in the city of St. Louis. They sue to recover a commission of one thousand dollars which they allege they earned in the performance, on their part, of the following contract made by and between them and the defendants:

"April, 1898.

"We hereby appoint Messrs. Marmaduke & Mudd our agents to procure for us a loan of $180,000 to $185,000 for ten years at four per cent; interest payable either semiannually or quarterly as preferred; with option of paying $10,000 or more of principal at any interest paying day after the expiration of two years.

"We agree to pay $1,000 commission which is to cover the following expenses in refunding loan now held by Prudential Insurance Company: Complete abstract of title, examination of same by attorney, recording trust deed, notary fees.

"It is understood and agreed that the money be furnished by May 5, 1898.

(Signed)                    "JOSEPH E. MARTIN,
"Secy. and Treas. of Trustees of Ed Martin Estate."

The defendants are trustees of the estate of Edward Martin, deceased, created such by his last will, which, among others, contains the following provisions:

"Third. I devise and give all the rest and residue of my estate, to my wife, Kate Martin, and to my seven children, Joseph E., Mary Agnes, Claude B., Edward, Annie, John P. and William J., in trust, however, for the purposes and in manner hereinafter described.

"Fourth. My said wife and children as such trustees, shall immediately upon my death receive and manage my real estate and such personalty as they may receive from my executors, and shall have, as a board of trustees, all the rights and powers incident to complete and perfect ownership, with power to sell, assign, transfer, mortgage or otherwise incumber and to lease, as in their discretion they shall deem fit, all or any part of my said estate, and to invest and re-invest the proceeds of my said estate, as often, and in such manner, as they shall deem best, except as herein limited or restrained.

"As soon as practicable after my death, they shall organize as such board, under the name 'Trustees of Edward Martin Estate,' and shall adopt rules for their own government, to be preserved in writing, and amended from time to time, as may be necessary which rules shall provide for meetings of the board, and for notice to the members thereof of all meetings, regular, special or adjourned; for the choice annually or otherwise, of a president, vice-president, secretary and treasurer, from amongst themselves, and shall prescribe the duties of such officers, and may combine all such officers and their duties in one or more of themselves, as they may deem best. Said board shall also through its secretary keep a record of its proceedings, at its meetings, to be attested by its president, vice-president or temporary presiding officer and by its secretary. The action of a majority of said board in all

cases be deemed the action of the board and in case of an equal division of its members on any question, lots may be cast to decide the same. It is my will that my executors shall, as soon as practicable after my death, pay all my just debts and legacies, except any debt or debts of mine, if any such there be, secured by deed or deeds of trust on my properties, situate respectively on the northeast corners of Tenth and Washington avenue, southeast corner of Tenth and Lucas avenue, and northeast corner of Sixth and Washington avenue in the city of St. Louis, Missouri; out of any cash on hand at my death, or from the proceeds of sale of personalty of my estate, not otherwise disposed of, or if these be insufficient, then from the proceeds of my realty, except the above specified corners; and shall at once thereafter pay over to said board of trustees, all funds in their hands not required for expenses of administration, without waiting for the order of the probate court of the city of St. Louis, and without requiring any refunding bond, and the said board's receipt shall be a full discharge to said executors of all liability as such.

"Fifth. Said board of trustees shall collect the rentals of my improved realty and all other income of my estate except that my residence, No. 3411 Pine street, and its household furniture, and such of my horses and vehicles, as she may select, shall be at my death turned over to the exclusive possession and use, for her life, free from any charge, on any account for rent, taxes, insurance, repairs, or the like, to my beloved wife, Kate Martin, such charges to be paid by said board.

"Out of the net income of my estate they shall pay to my wife in quarterly installments three thousand dollars per annum, during her life or widowhood, which with the residence and personalty above mentioned shall be in lieu of her dower in my estate. To each of my said children the sum of twelve hundred dollars per annum in like installments

shall be paid, and the rest of the net annual income shall be applied as rapidly as possible to the reduction and final payment of any indebtedness secured by deed of trust on any of my realty.

"The said board shall have power to sell all other realty, except the said corner properties, and shall apply the proceeds to said reduction and payment; and may also dispose of all personalty, for the same purpose, and in the event of my wife's death, may also sell and dispose of the residence, 3411 Pine street, and the lots on which it stands, and such personalty pertaining thereto, as they shall see fit; and may with her consent do so during her life, on such terms and conditions as she may impose. When all such indebtedness shall have been liquidated, said board shall distribute in quarterly payments the net annual income of said estate, after deducting the annual provision for my wife during life, as follows: To each of my children then living, an equal share of said net annual income during their respective lives. Should any of my said children be then dead, leaving lawful child or children, or issue, then said child or children or issue shall receive the share which would have been paid to the parent, if living. The said respective life interests are hereby given to my children to secure to each of them a certain annual income and they shall enjoy the same, free from the claims and demands of any and all creditors they may now or hereafter have, and without any power on their part as individual beneficiaries, to sell, assign, pledge, or in any manner anticipate the said income previous to its receipt by them respectively. The foregoing provision to secure to each of them absolutely, said income, is in no manner a restriction on the powers of management and disposition for reinvestment, or on any other powers herein vested in said children as members of said board of trustees. Whereas, however, I have already advanced to my son, Joseph E. Martin, to my daughter, Mary

Agnes O'Reilly, to my son, Claude B. Martin, and to my son, William J. Martin certain sums of money, and as I wish to equalize the shares of all of my children as near as practicable, I direct that in the quarterly distribution aforesaid, of the entire net income, after all indebtedness shall have been discharged, as aforesaid, there shall be deducted from the income, that would otherwise be payable to the said Joseph E., Mary Agnes, Claude B. and William J., respectively, the sum of three-fourths of one per cent, quarterly on the above mentioned respective advancements, and on any advancements I may hereafter make to any of my said children, and the sum of such deductions shall be added in equal portions to the respective shares of all my said children.

"When the last of my said children shall have died, the trust estate shall cease, and the whole thereof or whatever it shall consist, shall vest in full ownership free from said trust, in the descendants of my said children, in equal shares, *per stirpes,* and in default of such descendants, in my right heirs.

"When through death, or by reason of any condition destroying the power to contract as an individual, the number of trustees shall fall below three, there shall be selected from amongst any of the beneficiaries of said trust estate, by the two remaining trustees, a third trustee, so that the number thereof shall not be less than three. If there shall be no beneficiary of said estate of age, and qualified thereby to serve as such third trustee, said two remaining trustees shall have power to select a third trustee, a stranger to said estate, to serve as such until the beneficiary shall come of age."

At the time the contract was entered into, certain real estate of the estate of Edward Martin situated on the corner of Tenth street and Washington avenue in the city of St. Louis, was incumbered by a mortgage of one hundred and eighty thousand dollars bearing interest at the rate of four

and one-half per cent per annum. Plaintiffs, on an examination of the mortgage records of the city of St. Louis, discovered this mortgage and conceived the idea that the debt could be refunded at a lower rate of interest and communicated with James E. Martin, one of the trustees, about the matter and eventually secured the contract of appointment, supra, to procure a loan for the purpose, being assured at the time by Martin that the title to the property was "all right." After securing the contract, plaintiffs presented the matter to John S. Lowry, financial agent of the Northwestern Mutual Life Insurance Company of Milwaukee, Wisconsin, who then communicated with the company, the result being that the insurance company agreed to make the loan if the abstract of title to the real estate was perfect according to the record and should prove satisfactory to its counsel at its home office. A formal application for the loan was furnished by the insurance company, which was agreed to and signed by the defendants. Defendants also passed a resolution authorizing the president and secretary of the board of trustees to execute the necessary bond and mortgage to secure the loan. The formal application for the loan was received and approved by the company and funds provided and made ready for transmission should the title to the real estate prove satisfactory. Plaintiffs procured and paid for an abstract of title and had it examined by their attorney in the city of St. Louis and got his written opinion as to the validity of the title. On the abstract of title there was noted some personal judgments of record against two of the heirs of Edward Martin aggregating about ten thousand dollars; these had not been marked satisfied. The counsel of the insurance company refused to approve the title while these judgments remained unsatisfied and the insurance company notified the defendants that unless they paid these judgments they would not make the loan. The defendants refused to comply with this requirement and

the matter dropped. Plaintiffs paid one hundred and fifty dollars for the abstract and a fee of one hundred dollars to their attorney for his examination and opinion of the title for which they have not been reimbursed.

At the close of plaintiff's evidence the court gave an instruction that plaintiffs could not recover, whereupon they took a nonsuit with leave to move to set the same aside. In due time a motion to set aside the nonsuit and grant a new trial was filed, which motion the court overruled and plaintiffs appealed.

*Nagel & Kirby* for appellants.

(1) A broker employed to procure a loan performs his full duty when he finds a party able, willing and ready to make the loan, and with whom the principal makes a contract for a loan. Phister v. Gove, 48 Mo. App. 455; Finley v. Dyer, 79 Mo. App. 604; Gelatt v. Ridge, 117 Mo. 553; Lemon v. Lloyd, 46 Mo. App. 452; Nesbitt v. Helser, 49 Mo. 383. (2) When the completion of the loan or sale was prevented by the wrongful refusal of defendant to comply with the terms of a contract which he had authorized the broker to make in his behalf, the broker was entitled to recover as for a complete sale. Rice-Dwyer R. E. Co. v. Ruhlman, 68 Mo. App. 503. (3) A real estate broker, otherwise entitled to his commissions, is not deprived of his right thereto by reason of the refusal of the purchaser to carry out the contract of sale on account of an alleged defect in the title. Christensen v. Wooley, 41 Mo. App. 53. The parties to a contract may agree that the work done or things furnished shall be "satisfactory" to some third person. Williams v. Railroad, 153 Mo. 487; Chapman v. Railroad, 114 Mo. 542. Even though such a contract does not expressly make the decision of the third person final and conclusive, yet if the

subject-matter is to be submitted for his approval or is to be done to his satisfaction, he is thereby made the arbiter between the parties as to all matters so submitted, and his determination is final, conclusive and binding. Chapman v. Railroad, 114 Mo. 542. (4) The conclusion of such an arbiter can only be attacked by proof of fraud or such gross mistake as would necessarily imply bad faith, and neither appears in this record. Williams v. Railroad, 153 Mo. 487.

*T. J. Rowe* for respondents.

It is axiomatic that under the agreement which plaintiffs had with defendants, if the plaintiffs found a party ready, willing and able to make the loan on a perfect title, then they would have been entitled to their compensation, and if they failed so to do they have no claim against the defendants. They admit, and the proof shows, that they failed to find such a person. Defendant's title was perfect. The record herein proves it; it is admitted in the brief of appellants, and that fact was emphatically announced by the counsel for Northwestern Mutual Life Insurance Company, when he declared that the only objection to the title was the unsatisfied record judgments against the children of Edward Martin.

BLAND, P. J.—In the formal application for the loan furnished by the insurance company and signed by the defendants under the head of "Title" is the following: "This company accepts only such titles as are perfect of record. . . . Upon receiving at this office the abstract and attorney's certificate of perfect title above mentioned, this company's counsel at the home office will examine the papers and upon finding them satisfactory will prepare the bond and mortgage."

The obligation of defendants under their agreement was

to furnish a perfect title of record satisfactory to the counsel of the insurance company. They did not agree to refer the matter of title to the counsel of the insurance company and to abide by his decision as to its quality as contended for by plaintiffs. They agreed to furnish an abstract showing a perfect record title—a title which did not disclose a patent defect suggesting the possibility of a lawsuit to defend it, but a title safe to a moral certainty. Gerhart v. Peck, 42 Mo. App. 644. The obligation of plaintiffs was, when defendants furnished a perfect title of record, to procure the loan of the designated sum of money. The contention of plaintiffs is that defendants failed to furnish the required title. If this be true, then plaintiffs are entitled to recover, for the money would have been loaned had not the title been rejected as imperfect by the counsel of the insurance company.

The only objection made to the title by the counsel of the company was the fact that there were unsatisfied personal judgments of record against two of the heirs of Edward Martin. The last will of Edward Martin (which was before the counsel of the insurance company when he examined the abstract of title), devised the real estate in question to his wife and seven children in trust; the trust to continue until the last of his children should die, then to vest in fee in the descendants of his children. Under this devise there is no present estate in the real estate in any of the children of Edward Martin and the possibility of any future estate in any of them is cut off by the continuation of the trust until the last of them shall die; on the happening of which event the remainder, in fee absolute, vests in their children. They, therefore, have no interest in the real estate on which the judgments were a lien or any interest that could be sold under execution. Certain of the rents and profits of the trust estate are to be paid to the children of Edward Martin from time to time, but this provision of the will gives them no

interest in the title to the land nor in the least subjects the lands to the claims of their creditors.

So far as the record discloses, the defendants furnished a perfect title of record, and in this respect complied with their contract (Buffalo Loan and Safe Deposit Co. v. Knight Templars and M. M. Aid Ass'n, 126 N. Y. 450); the plaintiffs, through the fault of their customer, were prevented from complying with theirs, and for this reason are not entitled to their commission. No suggestions are made in their brief, nor was there an intimation given out on their oral argument by plaintiffs' counsel, of the ground or reasons for the opinion of the insurance company's counsel that the title was affected by the individual judgments against the heirs, and we are unable to conjecture upon what possible hypothesis the able counsel arrived at his conclusion.

The judgment is affirmed. All concur.