In the Matter of the Application of WILLIAM B. HERLANDS, as Commissioner of the Department of Investigation of the City of New York, and of ADELAIDE KELBY, Examiner of Accounts in the Department of Investigation of the City of New York, Petitioners, Appellants, to Vacate, Quash or Modify Certain Summonses Dated May 10, 1939, Directing Said Petitioners to Appear and Testify before a Special Committee of the Council of the City of New York Investigating the Administration of Relief Funds, and to Produce Certain Papers and Documents before Such Special Committee, against ABNER C. SURPLESS and Others, Constituting the Special Committee of the Council Investigating Relief, Respondents.*

First Department, December 18, 1939.

* Affg. 171 Misc. 914.

*Oren Clive Herwitz* of counsel [*Paxton Blair* with him on the brief; *William C. Chanler, Corporation Counsel*], for the appellants.

*Richard J. Barry* of counsel [*Harold W. Wolfram* with him on the brief], for the respondents.

CALLAHAN, J. On June 14, 1938, a resolution was adopted by the council of the city of New York providing for the appointment of a special committee to investigate the administration of relief funds in the city of New York. Thereafter and on November 4, 1938, the mayor of the city of New York directed the commissioner of the department of investigation to make an investigation of the department of welfare of the city of New York and of the administration by it of relief.

On May 11, 1939, the committee of the council procured a subpoena which was directed to William B. Herlands, as commissioner of the department of investigation. A like subpoena was procured directed to one Adelaide Kelby, an employee of the department of investigation. These subpoenas were procured from the Supreme Court under section 7 of the General City Law, although statutory authority appears to exist for issuance of subpoenas by the council itself under such circumstances. (New York City Charter, § 43.)

Appellants (the witnesses named) moved at Special Term to vacate both subpoenas. Their motion was denied and the present appeal followed.

Respondents contended at Special Term, and now contend, that the Supreme Court has no jurisdiction to review the issuance of these subpœnas. We find it unnecessary to determine that question for, assuming jurisdiction exists, we hold that the denial of the motion to vacate was proper.

Section 43 of the New York City Charter grants the council power to appoint committees to investigate any matter relating to the property, affairs or government of the city, and gives such committees the right to require the attendance of witnesses who may be examined under oath. This power has recently been affirmed by the courts. (*Matter of Radio Station WNYC* [*Novik*], 169 Misc. 502; affd., 255 App. Div. 844; affd., 280 N. Y. 629.)

Aside from the express right to investigate conferred by statute, the right to pass laws necessarily implies the right to direct an investigation of any matter which may become the subject of a law. (*People ex rel. Karlin* v. *Culkin*, 248 N. Y. 465.) Unquestionably local laws may be passed regulating the administration of relief, in so far as the same is being conducted by the city or with city funds. (New York City Charter, chap. 2.)

Section 803 of the charter provides that the commissioner of investigation shall make any investigation directed by the mayor or by the council. The council, therefore, might have directed the commissioner of investigation to make this investigation in its behalf and to make reports to the council. Instead, it has exercised its legislative function of conducting an investigation itself.

While the council is a local legislative body, in some respects of limited power, it may, where it has jurisdiction, act for the locality precisely as the Legislature may act for the State of New York. (*McCabe* v. *City of New York*, 213 N. Y. 468, 484.) The power to investigate conferred upon the council by section 43 of the charter makes the action of the council in conducting an investigation equivalent to an act of the Legislature.

In issuing the present subpœna the Supreme Court acted merely as the implement of the Legislature. (*People ex rel. Hastings* v. *Hofstadter*, 258 N. Y. 425.) Therefore, the courts, in considering the motions to vacate, are construing the validity of a legislative act, the reasonableness of which act it is not a judicial function to inquire into. The courts may not interfere with legislative action on the basis of a difference of opinion as to its wisdom or motives. (*Bacon* v. *Miller*, 247 N. Y. 311.)

In the case last cited the Court of Appeals said (at p. 318): " With the motives which actuated the Board of Aldermen we have nothing to do at all events in the absence of fraud or corruption. As to the reasonableness of their action, there may be two

sides, as there are to many legislative acts." At page 319, in the same case, the court stated further: " The courts, however, have no general supervision over legislation, whether it be that of the Legislature or the Board of Aldermen, and like other functions of government, have limited powers. As above stated, the court has no power to inquire into the reasonableness of this resolution."

In 1 Dillon on Municipal Corporations ([5th ed.] pp. 458, 459) the rule is stated as follows: " Thus, where the law or charter confers upon the city council, or local legislature, power to determine upon the expediency or necessity of measures relating to the local government, their judgment upon matters thus committed to them, while acting within the scope of their authority, cannot be controlled by the courts. In such case the decision of the proper corporate body is, in the absence of fraud, final and conclusive, unless they transcend their powers."

In *Matter of Hirshfield* v. *Craig* (239 N. Y. 105, 106) the Court of Appeals, in passing on a claim that a subpœna issued by the predecessor of the present commissioner of investigation (who was then known as commissioner of accounts) tended to harass the head of another city department, said (at p. 110): " The courts cannot assume to pass upon the good faith of public officers in the performance of their functions, and any attempt to pass upon the contention of a proposed witness that he should not be compelled to appear at an examination because the examination cannot result in any benefit to the city or is undertaken for reasons other than that the commissioner deems it for the best interests of the city, would result in interference with an administrative officer in the performance of his work. The courts pass no judgment upon questions which the Legislature under its constitutional power has submitted for decision to administrative officers, in the performance of purely administrative functions. The Legislature permits the commissioner to decide whether the examination would be for the best interests of the city and to issue subpœnas to witnesses. The courts are given no power to review or set aside such decision. The protection of the courts may be invoked only against attempts in the course of such examinations to infringe the rights of the citizen or to cause him some legal wrong." And (at p. 111) the court continued as follows: " The proposed witnesses who have been subpœnaed may not call upon the courts to pass upon the purpose or good faith of the commissioner in making such examination." .

What was said concerning the rights of a public officer subpœnaed as a witness in an administrative investigation would, of course, be applicable to a like witness when subpœnaed before a legislative

investigation. That the subpœna issued from a court as an aid to the Legislature would not alter the case.

The main contention of appellant Herlands is that the subpœna, because of its broad nature, will interfere with the proper conduct of an investigation being made by the commissioner at the behest of the mayor. In support of these contentions the commissioner asserts in an affidavit that his department has done a great deal of work in connection with the subject of investigating the administration of welfare relief, and that the witness Kelby has been assigned to that investigation. He contends that the disclosure now of all of the information he had gathered might result in closing new avenues of information available to him and destroy a substantial part of the usefulness of his investigation.

In effect, the answering affidavits of the chairman of the legislative committee deny these allegations, and assert the necessity of the production of the information obtained and papers held by the commissioner, in order to facilitate the council's investigation.

We do not deem it to be the function of the courts to settle disputes between the legislative and executive branches of the government with respect to the efficiency of the steps being taken by either of them, as distinguished from the legality of such steps. We do not by this statement wish to indicate that the commissioner has presented facts which would show that the council is in any way interfering with the duty conferred by law upon the commissioner. We see no reason why obedience to the present subpœna will thwart or impair the effectiveness of the commissioner's investigation. There appears to be no valid reason why the information obtained by the commissioner should not be available to the council, and why that body has not the legal right to obtain such information as soon as it deems necessary. To compel a second examination of those witnesses whom the commissioner may have examined would seem a wasteful duplication of effort. Nor can any claim be substantiated that the information obtained by the commissioner is confidential as against a legislative inquiry.

The subpœna attacked by Commissioner Herlands not only called for reports made by the commissioner to the mayor, but for the books and papers of the welfare department now in the commissioner's possession. If the latter documents may not be obtained because the commissioner of investigation has subpœnaed them or has otherwise obtained their possession, a legislative investigation might be thwarted by the action of the department of investigation in instituting its own investigation and seizing all documents available.

It seems clear from the authorities that the courts will not interfere with legislative action merely because of a complaint concerning its purpose, motives or efficiency. Where jurisdiction exists to interfere it will not do so unless there is infringement on the rights of citizens or a legal wrong is being committed. We see no private right being infringed here, and no legal wrong being committed.

The order appealed from should be affirmed, with twenty dollars costs and disbursements.

MARTIN, P. J., TOWNLEY and COHN, JJ.; concur; UNTERMYER, J., dissents.

MARTIN, P. J. (concurring). I concur in the opinion of Mr. Justice CALLAHAN but favor affirmance on, an additional ground.

The city council of the city of New York, pursuant to the power lodged in it by section 43 of the New York City Charter, adopted a resolution on June 14, 1938, designating the respondents as a special committee to investigate the administration of the emergency relief bureau and any other bureaus and departments of the city of New York concerned with the administration of emergency unemployment relief.

Several months thereafter and on November 4, 1938, the mayor of the city of New York directed William B. Herlands, commissioner of the department of investigation of the city of New York, to make a complete investigation of the department of welfare of the city of New York and of the administration by it of relief in that city.

The administration of relief funds in New York city is conducted in large part by the department of public welfare, which agency is under the direct supervision of the mayor. The commissioner of the department of investigation is appointed by the mayor and is also under his direct supervision. An investigation of relief, to be most effective, would be best conducted by a wholly independent agency, such as a grand jury.

If conditions warranted an unfavorable report, an investigator, whose tenure of office was at the pleasure of the appointive power, might find himself in an embarrassing position and be reluctant to make findings which might be displeasing to the appointing authority. That situation need not actually be present in order to make objectionable the procedure favored by the appellants. It is what might occur, not what has occurred, in such circumstances that renders unwise an investigation of one department of the city government by another department. Such a proceeding is somewhat similar to an individual ordering an investigation of himself after such an investigation has been ordered by a grand jury or

other independent agency. Investigations of this type have never been very effectual. No agency should be permitted, through a separate and subsequently ordered inquiry into the same subject, to interfere with a legally constituted independent agency conducting a *bona fide* investigation.

UNTERMYER, J. (dissenting). The enforcement by the Supreme Court of its own subpœna *duces tecum* directed to the commissioner of investigation, now investigating the administration of relief at the direction of the mayor of the city, lies within the control of the court. (*Carlisle* v. *Bennett*, 268 N. Y. 212; *Matter of Hirshfield* v. *Craig*, 239 id. 98; *People ex rel. Hastings* v. *Hofstadter*, 258 id. 425.) By the statute under which the subpœna was obtained (Civ. Prac. Act, § 406) it might only be issued in " a proper case." If it should now appear that this is not " a proper case," then the witness to whom it is directed may contest the validity of the subpœna before the tribunal by which it was issued. Since he could not be heard before it was issued he must have that opportunity now.

The subpœna in the present case requires the production before the special committee of the council investigating the administration of relief by the commissioner of every record, memorandum and document and all information in his possession, however confidential, pertaining to the investigation now conducted by him. If sustained, the subpœna will inevitably impair the effectiveness of the commissioner's investigation. Such a result should be averted if it is within the power of the court. The right to require the production of books and papers ought not to be exercised by an investigating body in such a manner as to paralyze another agency of government charged by law with the duty to conduct a similar investigation. The problem might be different if the committee were investigating the administration of the commissioner's department, but this it has not been authorized to do by the resolution under which it acts. Again, a different problem would be here if the subpœna required only the production of some particular document, such as the books of the welfare department to which reference is made in the opinion of Mr. Justice CALLAHAN, the continued possession of which might not be essential to the commissioner's investigation.

I find nothing in the statutes pertaining to such investigations which countenances any other view. By section 803 of the New York City Charter the commissioner of investigation is authorized to conduct three different classes of investigations: *First*, any investigation directed by the mayor; *second*, any investigation directed by the council; and, *third*, any investigation which in

the opinion of the commissioner may be required in the best interests of the city. The Administrative Code of the city of New York (§ 803–1.0) provides that the commissioner shall report: " 1. To the Council, the results of any investigation directed by the Council. 2. To the Mayor, the results of all other investigations." By these provisions the commissioner was constituted an investigating agency both for the legislative and the executive departments of the city government, depending upon which of these had directed the investigation to be made. (Compare *Humphrey's Executor* v. *United States*, 295 U. S. 602.) That conclusion is not left to inference alone, for it is expressly provided that the commissioner shall report to the council the results of any investigation directed by the council but, when directed to conduct an investigation by the mayor, he shall report, not to the council, but to the mayor. It seems equally clear that there was inherent in these provisions a purpose to prevent either branch of the city government from frustrating an investigation directed by the other — a purpose which is nullified if the subpœna is sustained and the commissioner required, under compulsion of legal process, to disclose to the council at this time the results of the investigation which has been directed by the mayor. To require the commissioner to reveal to the council all the information thus accumulated by him is tantamount to requiring him to report to the council concerning the results of his investigation before he has reported to the mayor as provided by law.

The question presented is not the right of the city council to investigate relief, as I understand Presiding Justice MARTIN to suggest. That right is conceded and also conceded is the right of the commissioner to conduct a similar investigation. What is presented, as it seems to me, is the right of these two agencies to frustrate one another's investigations and to use the power of subpœna for that purpose. To my mind there is no reason to prevent them from proceeding simultaneously in the performance of their duties without encroaching upon each other.

Both as a matter of discretion and as a matter of right, the subpœna *duces tecum* served on the commissioner should be vacated, without prejudice to the issuance of such a subpœna after the commissioner shall have concluded his investigation and reported to the mayor and also without prejudice to a subpœna, properly limited, at this time.

Order affirmed, with twenty dollars costs and disbursements.