In the Matter of the Investigation by the SPECIAL COMMITTEE Designated by the City Council of the City of New York, to Inquire into the Charges by the Lincoln Hospital Alumni Association in Regard to the Management of Lincoln Hospital, Bronx, New York.

SIGISMUND S. GOLDWATER, Commissioner of Hospitals of the City of New York, and RUDOLF RAPP, Medical Superintendent of Lincoln Hospital, Respondents.*

Supreme Court, Special Term, New York County, April 30, 1940.

*Affd., 259 App. Div. 883.

*Thomas H. McManus,* for the committee.

*William C. Chanler, Corporation Counsel [Seymour B. Quel* of counsel], for the respondents.

MILLER, J. This is an application to direct Sigismund S. Goldwater, commissioner of hospitals of the city of New York, and Rudolf Rapp, medical superintendent of Lincoln Hospital, to show cause why a warrant should not issue for their apprehension and commitment to jail until they shall have produced certain books, papers and records, etc., specified in subpœnas served upon them. The application is made on behalf of the special committee designated by the city council of the city of New York to inquire into charges by the Lincoln Hospital Alumni Association in regard to the management of the hospital.

Section 43 of the New York City Charter provides that the city council " shall have power from time to time to appoint a special committee to investigate any matters relating to the property, affairs or government of the city or of any county within the city," and that " such committee shall have power to require the attendance and examine and take the testimony under oath of such persons as it may deem necessary." Subdivision 1 of section 406 of the Civil Practice Act authorizes the chairman of such committee to issue subpœnas requiring the attendance of witnesses and the production of books and papers. Other subdivisions of the same section authorize the making of applications to punish for contempt in the event of disobedience of such subpœnas.

On March 15, 1940, the city council duly adopted a resolution directing the committee on rules of the council to designate a special committee of the council to examine into charges of negligence and maladministration in the treatment of patients at Lincoln Hospital and unnecessary deaths resulting from said treatment, and into charges of discrimination in appointments

and promotions of doctors at the hospital, and to report back to the council its findings, conclusions and suggested remedies, if any, upon the termination of its investigation. Pursuant to the terms of the resolution, the committee on rules designated a subcommittee of five members of the council. This subcommittee in turn by unanimous vote empowered Louis Cohen, its chairman, to sign subpœnas requiring the attendance of witnesses and the production of records before the committee. On April 9, 1940, the chairman issued a subpœna *duces tecum* addressed to Commissioner Goldwater and another to Medical Superintendent Rapp. These subpœnas were duly served. On April 11, 1940, Commissioner Goldwater appeared before the committee and advised it that he would not produce any records containing data relating to the condiction of patients at the hospital or medical or other treatment or service furnished to said patients. Dr. Rapp appeared at the same time and informed the committee that he would not produce any papers or documents relating to complaints made by any one with respect to any of the internes, clinic physicians or visiting staff of Lincoln Hospital or with respect to medical or other treatment or service furnished in the wards or clinics of the hospital containing data relating to the condition of the patients or to the medical or other treatment or service furnished to them. The refusal of both Commissioner Goldwater and Dr. Rapp to obey the subpœnas was predicated upon their claim that to produce the records which they declined to furnish would violate the provisions of section 352 of the Civil Practice Act to the effect that " A person duly authorized to practice physic or surgery, or a professional or registered nurse, shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity."

In support of the application to punish for contempt, the chairman of the committee states that an examination of the withheld records is necessary in order to enable the committee to conduct its investigation of the charges of negligence and incompetence in the treatment of patients at Lincoln Hospital. It is further pointed out that the charges with respect to the treatment of patients at the hospital were made by members of the Lincoln Hospital Alumni Association who have been described by the Bronx County Medical Society as " physicians * * * for whose integrity and good standing in the Bronx County Medical Society we can vouch," and as " physicians who are reputable members of the medical profession." The Bronx County Medical Society itself has informed the mayor that " the complaint merits investi-

gation." As the chairman states, a holding that section 352 of the Civil Practice Act is applicable to the investigation being conducted by the committee would mean that the latter would be unable to ascertain the contents of the hospital records or obtain the testimony of the physicians themselves, resulting in complete frustration of the investigation.

At common law information acquired by physicians or nurses in the treatment of patients was not privileged and a disclosure of the patient's condition and the treatment given him could be compelled. (*Buffalo Loan, Trust & Safe Deposit Co.* v. *Knights Templar*, 126 N. Y. 450, 454; *People* v. *Austin*, 199 id. 446, 451.) Only to the extent that the situation existing at common law has been changed by statute are communications between physician and patient now privileged. The only statute which purports to create such a privilege is section 352 of the Civil Practice Act. That section, however, it has been held, applies only to judicial proceedings and does not create a privilege for all purposes and under all conditions. Thus, in *Buffalo Loan, Trust & Safe Deposit Co.* v. *Knights Templar* (*supra,* p. 454) the Court of Appeals said: " Section 834 is a re-enactment of a similar section in the Revised Statutes. (2 R. S. 406, § 73.) It is contained in the chapter of the Code relating to evidence, and in the article in that chapter entitled: ' Competency of a witness; evidence in particular cases.' *The primary purpose of the section was to declare the rule governing the examination of a physician as a witness in judicial proceedings.* The three sections, 834, 835 and 836, relate respectively to disclosures by clergymen, physicians and attorneys and section 837 declares that ' the last three sections apply to every examination of a person as a witness, unless the provisions thereof are expressly waived by a person confessing the patient or the client.' The disclosure by a physician of information acquired in his professional character in attending a patient, where not made in the course of his professional duty, is a plain violation of professional propriety. But the statute does not prescribe a rule of professional conduct for the government of physicians in their general intercourse with society. The common law did not protect a physician from disclosing as a witness information acquired professionally from patients. (1 Green. Ev. § 248.) The statute was intended to afford this protection and to protect the patient also. If a physician, disregarding the plain obligations of his situation, should, in conversation, disclose the secrets of his patient, he would, so far as we know, violate no statute, however reprehensible his conduct would be. The statute should have a broad and liberal construction to carry out its policy. By reasonable construction it excludes a

physician from giving testimony *in a judicial proceeding* in any form, whether by affidavit or oral examination, involving a disclosure of confidential information acquired in attending a patient, unless the seal of secrecy is removed by the patient himself." (Italics supplied.)

Confirmation of the view that section 352 was intended to apply only to judicial proceedings is to be found in the fact that the only provision permitting a waiver of the privilege provided for in section 352 states that the waiver " must be made in open court, on the trial of the action or proceeding, and a paper executed by a party prior to the trial providing for such waiver shall be insufficient as such a waiver." (Civ. Prac. Act, § 354.) Had there been any legislative intention that the plea of privilege should be available in a legislative investigation or in a proceeding other than one in court, provision would undoubtedly have been made for a waiver other than in " open court, on the trial of the action or proceeding."

The court accordingly holds that the privilege provided for in section 352 of the Civil Practice Act does not apply to legislative investigations. In *Matter of Herlands* v. *Surpless* (258 App. Div. 275) the Appellate Division in this department pointed out that " The power to investigate conferred upon the council by section 43 of the charter makes the action of the council in conducting an investigation equivalent to an act of the Legislature." To uphold the claim of privilege would make it impossible for the city's legislative body to examine into the serious charges made with respect to the administration of Lincoln Hospital. Incompetence and malpractice to the great harm and danger of the public might thus be permitted to continue while the city's legislative body remained powerless to ascertain the facts and take appropriate action. There is not the slightest evidence that the Legislature, in enacting section 352 of the Civil Practice Act, ever intended to extend its scope so as to produce such a situation. If the hospital authorities are permitted access to the confidential data relating to the treatment of patients, there appears to be no good reason for withholding the same from the city council which, in effect, is the legal superior of the hospital authorities, Lincoln Hospital being a city hospital.

The respondents also make the technical point that the proceeding was improperly instituted. They contend that the procedure which should have been followed by the committee investigating the hospital is that set forth in sections 6, 7 and 8 of the General City Law relating to investigations by common councils of cities. They maintain that under those sections the committee or its chairman should have applied to this court for the issuance of a summons requiring the witnesses to appear and testify, and that

it was improper for the chairman of the committee to issue subpœnas. The express language of section .43 of the charter and of section 406 of the Civil Practice Act, previously referred to, appears expressly to authorize the procedure adopted by the committee's chairman in the instant case. The provisions of sections 6 to 8, inclusive, of the General City Law were apparently intended to apply only in the absence of express statutory authority for the summoning of witnesses by the committee and the taking of their testimony. Section 6 by its terms applies where the common council of a city shall have appointed a committee of members, without making any mention of the necessity that the common council be empowered by statute to require witnesses to attend and testify. Where a statute expressly confers such power upon a committee of a common council, it would seem to be unnecessary to resort to the provisions of the General City Law, in view of the provisions of section 406 of the Civil Practice Act expressly authorizing the chairman of the committee to issue a subpœna.

The motion is granted to the extent of directing the respondents to produce all the books, papers and records which they have heretofore declined to produce on the ground of privilege. In the event of their failure to obey, a warrant may issue.

Settle order.