CLARENCE W. QUEATHAM et al., Respondents, v.
MODERN WOODMEN OF AMERICA, Appellant.

St. Louis Court of Appeals, April 19, 1910.

1. LIFE INSURANCE: Fraternal Beneficiary Association: Engaging in Forbidden Occupation by Insured. In an action on a certificate of insurance issued by a fraternal beneficiary association, where the evidence is conclusive that at the time of his death insured was engaged in an occupation prohibited by the express terms of the contract of insurance, if it be further shown that his death was directly traceable to such employment, no liability obtains against the insurer.

2. ———: ———: ———: Cause of Death: Burden of Proof. A fraternal beneficiary association, seeking to defeat recovery on a certificate of insurance on the ground the member died while engaged in a prohibited occupation, has the burden of showing the member came to his death as a direct result thereof.

3. ———: ———: ———: Evidence: Proofs of Death: Admissions. Proofs of death furnished by a beneficiary in a life policy to insurer, in accordance with the policy, are admissible in evidence against the beneficiary as admissions of the truth of the statements therein contained, but the admissions are only prima facie true, and may be explained on the trial.

148 App—3

4. **GUARDIAN AND WARD: Evidence: Admissions by Guardian.**
Generally, a guardian may not make an admission contrary to
the interest of his ward, and, as against an infant, everything
must be proved.

5. **LIFE INSURANCE: Fraternal Beneficiary Association: Guard-
ian and Ward: Evidence: Admission by Guardian: Proofs of
Death.** A guardian furnishing proofs of death of one injured in
a life policy, payable to his infant wards, may not bind the
wards by admissions beyond the actual requirements of the
policy, and where the cause of death need not be stated in the
proofs, and a transcript of the coroner's inquest need not be
furnished therewith, the act of the guardian in stating the
cause of death in the proofs of death, and in furnishing there-
with a transcript of the coroner's inquest, is not binding on
the infant beneficiaries.

6. ———: ———:. **Proofs of Death: Requirements: Stating
Cause of Death.** A mutual benefit certificate, stipulating that
no action may be maintained thereon until proofs of death and
of claimant's rights to benefits have been filed and passed on
by the officers of the association, does not impose the duty to
recite in the proofs of death the cause of death.

7. **EVIDENCE: Hearsay: Depositions Taken Before Coroner.**
Depositions of witnesses before a coroner are not admissible
in evidence in litigation subsequently arising, touching the
subject-matter of the coroner's inquest, unless expressly author-
ized by statute.

8. ———: ———: ———: **Admissible to Impeach.** Depositions of
witnesses before the coroner may be used for the purpose of
contradicting witnesses giving testimony in subsequent litiga-
tion touching the same subject-matter.

9. ———: ———: **Statute.** Section 6642, Revised Statutes 1899,
providing that the evidence of witnesses before the coroner
shall be preserved in writing and shall in a specified case be
returned to the court of the county having criminal jurisdiction,
does not make depositions of witnesses before the coroner
admissible in evidence to establish the cause of death in any
case.

10. **CORONERS: Inquest not Court of Record.** Under the common
law in England, a coroner's inquest was a court of record, but
it is not so regarded in this country.

11. **EVIDENCE: Judicial Records: Conclusiveness.** Records of
courts of competent jurisdiction are conclusive between the
parties and privies, and, as a general rule, they import absolute
verity.

12. **CORONERS: Determining Whether Inquest Should be Held.** The exercise of discretion by a coroner with respect to determining whether or not an inquest should be held is an act of judicial character; but aside from this, there is nothing in the statutes according the force and effect of a judicial proceeding to an inquest.

13. **EVIDENCE: Coroner's Inquest: Admissibility of Verdict.** No provision of our statute authorizes the reception of a coroner's verdict in evidence in civil litigation arising out of the subject-matter of the inquiry, for the purpose of proving the cause of death.

14. **LIFE INSURANCE: Fraternal Beneficiary Association: Evidence: Coroner's Inquest: Admissibility of Verdict.** In an action on a mutual benefit certificate, the coroner's verdict is competent evidence as part of the proof of the death of insured, but it is not prima facie competent as tending to prove the cause of such death, and this is true no matter by which party it is introduced.

15. ————: ————: **Engaging in Forbidden Occupation by Insured: Cause of Death: Sufficiency of Evidence.** In an action on a mutual benefit certificate, stipulating that there shall be no recovery if the death of the member occurred as a direct result of following a prohibited occupation, evidence *held* not to show that the member came to his death as a direct result of engaging in a prohibited occupation.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*Benj. D. Smith* and *R. M. Tunnell* for appellant.

(1) Proofs of death furnished to the society are prima-facie evidence of the facts therein stated and are conclusive unless the beneficiaries show that the statements made therein were erroneous or were given through mistake. Almond v. Modern Woodmen of America, 113 S. W. 695; Insurance Co. v. Newton, 22 Wall. 32; Hassencamp v. Ins. Co., 120 Fed. 475; Hanna v. Ins. Co., 44 N. E. 1099; Walther v. Insurance Co., 4 Pac. 413; Modern Woodmen of America v. Von Wald, 49 Pac. 782; Hart v. Trustees, etc., 84 N. W. 851;

3 Elliott on Evidence, sec. 2387; 2 Wigmore on Evidence, p. 1265. (2) Where, as in this case, the unexplained admissions in the death proofs, and the uncontradicted evidence shows the fact that Queatham was engaged in a hazardous occupation and that his death was directly traceable thereto, it was the duty of the trial court to direct a verdict for the defendant and the court erred in not so directing the jury, and the appellate court will, on appeal, reverse the judgment. Riechenbach v. Ellerbe, 115 Mo. 588, and cases therein cited. Lavin v. Grand Lodge, 104 Mo. App. 1; Carroll v. Transit Co., 107 Mo. 653. (3) Where a verdict can be accounted for only on the ground of ignorance, partiality, prejudice, or passion, it will not be permitted to stand. Lang v. Moon, 107 Mo. 334; Caruth v. Richerson, 96 Mo. 180; Avery v. Fitzgerald, 94 Mo. 207; Garrett v. Greenwell, 92 Mo. 120; Spohn v. Railroad, 87 Mo. 74; Whitsett v. Ransom, 79 Mo. 258. (4) In order to establish that Queatham's death was due to an accident traceable to his occupation the defendant is not required to negative mere conjecture or even plausible possibilities. A verdict based upon conjecture or mere possibility cannot be permitted to stand. Sovereign Camp v. Haller, 24 Ind. App. 108; Sovereign Camp v. Hruby, 96 N. W. 998; Agen v. Metropolitan, etc., Co., 80 N. W. 1020; Leisenberg v. State, 84 N. W. 6; Supreme Lodge v. Fletcher, 29 Southern 523; Zearfoss v. Switchmen's Union, 112 N. W. 1044; Hardinger v. Modern Brotherhood, 103 N. W. 74. (5) If but one natural and rational inference can be drawn from the undisputed facts, it is the duty of the court to treat the matter in question as one of law and direct the proper verdict. Hardinger v. Modern Brotherhood, 103 N. W. 74; Somerville v. Knights Templar, 11 App. D. C. 417; White v. Ins. Co., 105 N. Y. S. 87; Sovereign Camp v. Hruby, 96 N. W. 998; Clemens v. Royal Neighbors, 103 N. W. 402; Pagett v. Connecticut, etc., Co., 66 N. Y. S. 804; Seybold

v. Supreme Tent, 83 N. Y. S. 149; John v. Northwestern, etc., Assn., 63 N. W. 276.

*John E. Turner* for respondents.

(1) Records of coroner's inquest are not evidence of the truth of the facts therein stated but only that said record was made. Carney v. Carney, 95 Mo. 353; Ins. Co. v. Kielgast, 6 L. R. A. 65. (2) Deceased was not working for a railroad company but was employed by the Hydraulic Press Brick Company and the terms of defendant's by-laws clearly contemplate and evidently were for the purpose of covering employees of railroad company in the hazardous occupations mentioned, and was so understood by deceased as well as defendant, and hence do not apply to this case. James v. Casualty Co., 113 Mo. App. 622; Foglesong v. Modern Brotherhood of America, 121 Mo. App. 548; Batten v. Modern Woodmen of America, 131 Mo. App. 381. (3) The burden of proof is on defendant to show that insured's death was directly traceable to hazardous occupations. It is not enough to show that he was engaged in such occupation or even to show that his death was indirectly traceable thereto, but must show to the satisfaction of the jury that it was directly traceable to such hazardous occupation. Meadows v. Ins. Co., 129 Mo. 76; Fetter v. Fidelity and Casualty Co., 174 Mo. 256; Hodsdon v. Ins. Co., 97 Mass. 144; Campbell v. Insurance Co., 98 Mass. 381; Redman v. Ins. Co., 49 Wis. 431; Ins. Co. v. Brawn, 57 Miss. 308; Ins. Co. v. Ewing, 92 U. S. 377; 4 Briefs on the Law of Insurance, pp. 3257 (m), 3258. (4) The by-laws of defendant should be construed so as to give and not forfeit or destroy insurance. James v. Casualty Co., 113 Mo. App. 622, supra; Fogelsong v. Modern Brotherhood of America, supra; Lewine v. Supreme Lodge K. of P., 122 Mo. App. 547; Edmonds v. Modern Woodmen of America, 125 Mo. App. 214; Leech v. The Order of R. R. T., 130 Mo. App.

5; Rodgers v. Modern Brotherhood of America, 131 Mo. App. 353; Batten v. Modern Woodmen of America, supra; Knights Templars & M. L. I. Co. v. Jarman, 104 Fed. 638; Parish v. N. Y. P. Exchange, 169 N. Y. 34; Weber v. Supreme Tent of Maccabees, 172 N. Y. 490; Hall v. The Spring F. & M. Ins. Co., 46 Mo. App. 508; Renn v. Supreme Lodge K. of P., 83 Mo. App. 442; Fogelsong v. Modern Brotherhood of America, supra; Lewine v. Supreme Lodge K. of P., supra; Siebert v. Supreme Council O. C. F., 23 Mo. App. 268; Connelly v. The Shamrock B. S., 43 Mo. App. 283. (5) Proofs of death, even though furnished by adult beneficiary not conclusive where there is any evidence, however slight, to the contrary, and to treat them in the most favorable manner is only to submit the same to the jury along with other evidence. Almond v. Modern Woodmen of America, 133 Mo. App. 382; 3 Elliott on Evidence, p. 873, sec. 2390; Ins. Co. v. Kielgast, 6 L. R. A. 65, supra; 4 Briefs on the Law of Insurance, p. 3259 (n); 4 Briefs on the Law of Insurance, p. 3471. (6) Neither the plaintiffs nor their guardian made any voluntary admissions but were forced by defendant to furnish the certified copy of the coroner's proceeding at the inquest of deceased, as a part of the proofs of death. Defendant's By-laws A. D. 1905, secs. 62-64; fifth instruction, page 59, defendant's abstract of record. (7) Admissions made by the guardian of infant wards in furnishing proofs of death, as in this case, such guardian being a nominal party only, are not binding on his wards, they being the real parties in interest. Melcher, Admr., v. Derkum Admr., 44 Mo. App. 650; Eitelgreorge v. The Mut. H. B. Assn., 69 Mo. 52; Knights Templars & Masons L. I. Co. v. Crayton, 209 Ill. 550, 70 N. E. 1066; Cochran v. McDowell, 15 Ill. 10; McClay v. Norris, 9 Ill. 370; Reaves v. Fillden, 18 Ill. 77; Quigley v. Robers, 44 Ill. 504; Shlatterer v. Brooklyn & N. Y. F. Co., 75 (App. Div.) N. Y. 330; Buffalo L. T. & S. D. Co. v. Knights Templar & M. M. A. Assn., 126 N. Y. 450, 27

N. E. 942, 22 Am. St. Rep. 839; Casper v. Mayhew, 40 Mich. 528; Wood v. Truax, 39 Mich. 628; Claxton v. Claxton, 56 Mich. 557; Crainy v. Parker, 1 Ind. 374; Hiatt v. Brooks, 2 Ind. 508; Matthews v. Dowling, 54 Ala. 202; Daingerfield v. Smith, 83 Va. 81; Bank v. Patton, 1 (Rob) Va. 499; Waterman v. Lawrence, 19 Cal. 210; Kidwell v. Ketler, 146 Cal. 12; Hayden v. Collins (Cal. App.), 81 P. 1120; Stinson v. Pickering, 70 Me. 273; Ins. Co. v. Stebbe, 46 Md. 302; Fidelity Mut. L. Assn. v. Ficklin, 74 Md. 173; Ins. Co. v. Nicklas, 88 Md. 470; Benson v. Wright, 4 Md. Ch. 278; Eaton v. Fillinghast, 4 R. I. 276; Isert v. Davis, 17 Ky. L. Rep. 686; Bank v. Richie, 33 U. S. 8 Pet. 128; Buck v. Maddock, 47 N. E. 208; McIlvoy v. Alsop, 45 Miss. 374; Aikn v. Gatlin, 48 La. Ann. 877; Finn v. Hemstead, 24 Ark. 111; Pillow v. Sentelle, 39 Ark. 61; Moore v. Woodall, 40 Ark. 42; Pinchbock v. Graves, 42 Ark. 222; Driver v. Evans, 47 Ark. 295; 1 Elliott on Evidence, secs. 242, 244, 245, 246; Briefs on the Law of Ins. (Cooley), pp. 3468, 3469, 3470, 3471. (8) Certificate of membership prima-facie evidence of good standing. Mulroy v. Supreme Lodge K. of H., 28 Mo. App. 463; Forse v. Supreme Lodge K. of H., 41 Mo. App. 106. (9) Trial court did not err in refusing to direct the jury to return a verdict for defendant. Steube v. Christopher & Simpson, I. & T. Co., 85 Mo. App. 640; Ladd v. Williams, 104 Mo. App. 390.

NORTONI, J.—This is a suit on a certificate of life insurance. The plaintiff recovered and defendant prosecutes the appeal. The question for decision relates entirely to the sufficiency of the proof to sustain the verdict for plaintiffs. In other words, it is urged the court should have directed a verdict for defendant on its affirmative defense that deceased came to his death as a direct result of his employment in an occupation prohibited by the contract of insurance. As the principal elements relied upon by defendant in support of its ar-

gument consist of admissions in the proof of death and the record of the coroner's inquest introduced by it, the competency and probative force to be accorded to these documents are subjects for consideration as will hereafter more fully appear.

The defendant is a mutual benefit association organized under the laws of the State of Illinois and doing a life insurance business in Missouri. The plaintiff sues as the duly appointed and qualified guardian of several minors who are the beneficiaries in the certificate of insurance involved. It appears that several years ago the deceased, David Queatham, father of the beneficiaries, became a member of the defendant order and for a competent consideration it issued to him its certificate of insurance on his life to an amount not exceeding two thousand dollars which, after the decease of his wife, became payable to his children, the infant beneficiaries, for whom the guardian prosecutes this suit. The insured, David Queatham, died December 26, 1906, but just what occasioned his death was the question at issue in the trial, for, if it occurred as a direct result of his following the occupation of railroad brakeman or switchman, which was prohibited by the contract of insurance, no liability may be enforced against the defendant.

At the trial, besides introducing the certificate of insurance and proving the right of the guardian to maintain the suit for the infant beneficiaries, plaintiff introduced a stipulation, executed by the defendant to the effect that at the time of his death the insured was in good standing in the order and had paid all of his assessments and dues thereto. The defendant, by its answer, admitted as well that plaintiff had departed this life on the date mentioned and due proof of his death had been furnished it in accordance with the stipulation of the contract.

A prima facie case having been thus made, the defendant sought to escape liability on the grounds the

insured came to his death as a direct result of following the occupation of a railroad brakeman or switchman, which occupation was prohibited by the contract. The certificate of insurance stipulated that if the insured should follow any employment or occupation mentioned in section 14 of the by-laws of the society the contract of insurance should thereby become *ipso facto* null and void as to any claim for death benefits, if the death of the insured was directly traceable to such hazardous employment or occupation. Section 14 of the by-laws, in force at the time the certificate was issued and at all times thereafter, including the date of the death of the insured, denounced and prohibited the occupation of railroad brakeman on all trains except passenger trains using air-brakes only and further denounced and prohibited the occupation of a railroad switchman, such as switching or coupling cars or braking thereon. And it was further stipulated in the contract that a person should be held to be engaged in such prohibited occupations when the work or duties incident to his employment required him occasionally or continuously during any part of the year to perform any of the work or duties of or incident to such prohibited occupations. The insured was in the employ of the Hydraulic Press Brick Company at the time of his death and the duties of his employment required him to work both as a railroad brakeman and switchman about a locomotive engine and numerous cars on the tracks at the works of the press brick company. It is true he was not employed by the railroad company, nevertheless he, together with his companions, worked daily about a standard locomotive engine and railroad cars operated by the press brick company at its works. The duties of the insured were to throw switches, give signals, couple cars, set brakes, ride on the freight cars and locomotive engine as on any railroad. It appears, too, the train about which he worked was not a passenger train and the cars were not cars using air-brakes. Indeed, the evidence is conclusive to

the effect that at the time of his death the insured was engaged in an occupation prohibited by the express terms of the contract of insurance and if his death was directly traceable to such employment, then no liability therefor obtains against the defendant, for the reason such liability is expressly excluded by the provisions of the contract.

After setting forth the provision of the certificate and its by-laws touching such prohibited employment, the defendant affirmatively pleaded the insured came to his death by being crushed between the cab and the tender of a locomotive engine about which he was employed and prayed to be discharged from liability on the ground his death was directly traceable to such prohibited employment. There can be no doubt that the burden is on the defendant to show to the reasonable satisfaction of the jury the insured came to his death as a direct result of the prohibited occupation in which he was engaged. [Meadows v. Pac. Mut. Life Ins. Co., 129 Mo. 76, 31 S. W. 578; 3 Elliott on Evidence, sec. 2372; 4 Cooley's Briefs on Insurance, p. 3257.]

To sustain this burden, the defendant introduced in evidence, over the objection and exception of plaintiff, the proofs of death furnished it by the plaintiff, together with a copy of the coroner's inquest or verdict and the depositions of witnesses given at such inquest. The evidence was received on the theory that it constituted admissions by plaintiffs against interest.

In connection with, and as parcel of, the proofs of death, there is a certificate of the attending physician to the effect that insured came to his death from a fracture at the base of the skull and the several depositions of witnesses at the inquest together with the verdict of the coroner's jury recite deceased came to his death from injuries received by being crushed between the tender and cab of a locomotive engine while rounding a short curve.

After the court received these documents in evidence, over the objection and exception of plaintiff, plaintiff introduced other evidence in rebuttal, tending to contradict the same and indicating the insured might have come to his death as a result of a stroke of apoplexy. This evidence will be further noticed hereafter. The defendant argues that the evidence introduced by plaintiff in rebuttal is wholly insufficient to overcome and repel the probative force of the facts recited pertaining to the cause of death in the proof of death and the depositions and coroner's verdict; that the proof of death and proceedings before the coroner are to be regarded as admissions against the beneficiary and sufficient to support its defense unless overcome by substantial evidence to the contrary.

This matter will be considered in three parts: First, as to the competency of the proof of death as admissions against interest; second, as to the depositions given before the coroner; and third, as to the probative force of the coroner's inquest, or, in other words, the verdict of the coroner's jury.

It may be stated as a general rule that proofs of death furnished by a beneficiary to the insurer in accordance with the stipulations of the policy are admissible in evidence against such beneficiary as admissions by him of the truth of the statements therein contained. Although there is strong reason for the rule where the statement is made directly by the beneficiary, it is subject to the qualification that the beneficiary will not be estopped by erroneous statements in the notice of proofs of death under all circumstances. In other words, succinctly stated, in proper cases, admissions contained in such proofs may be explained on the trial. They are only prima facie that the facts stated are true. [Ins. Co. v. Newton, 12 Wallace 32, 89 U. S. 32; 4 Cooley's Insurance Briefs, pp. 3467, 3471, 3472; 3 Elliott on Evidence, sec. 2387.] But the rule as to such admissions does not obtain in this case for the reason the

plaintiff here acted in the capacity of guardian for his wards in furnishing the proof of death. Generally speaking, the guardian can make no admission contrary to the interest of the ward. As against an infant, everything must be proved and he is not bound by admissions made by the guardian. [Cochran v. McDowell, 15 Ill. 10; Kidwell v. Ketler, 146 Cal. 12; Claxton v. Claxton, 56 Mich. 557; Quigley v. Roberts, 44 Ill. 503; Schlotterer v. Brooklyn, etc., Ferry Co., 75 App. Div. Rep. N. Y. 330; Cooper v. Mayhew, 40 Mich. 528; 15 Am. and Eng. Ency. Law (2 Ed.), 71, 72.] It may be that this doctrine obtains with full force and effect as to all statements of fact in proofs of death under life insurance policies made by guardians to the end of collecting the insurance for his ward. But on this we give no opinion. This question is expressly reserved for the reason it is unnecessary to a proper disposition of the case. It is sufficient to say here that the general doctrine precluding admissions by a guardian as against the interest of his ward obtains, at least in insurance cases, to the extent that such guardian may not bind the ward by making admissions beyond the actual requirements of the policy. Where the contract between the parties expressly requires certain facts to be disclosed in the proofs of death as a condition precedent to collecting the insurance, it may be that the statement of facts to that end made by the guardian are competent to be received as admissions against the interest of the ward, but on principle the rule certainly can extend no farther than this. As a general proposition, an agent may bind his principal within the scope of his authority, but the rule as to guardians is more strict than that which obtains ordinarily between principal and agent. And it is entirely clear that a guardian will not be permitted to bind his ward by statements in the proof of death which are not required to be made as conditions precedent. [Buffalo Loan & Trust, etc., Co. v. Knight Templar Assn., 126 N. Y. 450, 27 N. E. 942; Knights Tem-

plar, etc., Co. v. Crayton (Ill.), 70 N. E. 1066; 4 Cooley's Insurance Briefs, pp. 3468, 3469.]

The admission relied upon as being in the proof of death is the statement of the attending physician that the insured came to his death from a fracture at the base of the skull together with statements contained in the depositions given before the coroner and the verdict indicating that his death resulted from being caught between the cab and tender of a locomotive engine. It is certain that none of these statements can be accepted as admissions against the interest of the infant wards for the reason, if none other, that the guardian was not required by the contract of insurance to make any such showing of fact. It is argued by defendant in the brief as though its by-laws required these matters to be set forth in the proof of death. As to this we are unadvised. It is sufficient to say that no such by-laws appear in the record before us. All that appears in the record touching the requirements as to proof of death is a recital in the certificate to the effect that no action may be maintained thereon until proofs of death and claimant's right to benefits have been filed with the company and passed upon by the board of directors. From this no requirement appears by which the duty is imposed upon any one to recite the cause of death in such proofs. This being true, any statement made by the guardian in such proofs, or otherwise, with respect to that matter, was voluntary and that such voluntary statements may not be attributed to the ward as admissions against interest is beyond question. See Buffalo Loan Trust, etc., Co. v. Knights Templar, etc., 126 N. Y. 450, directly in point.

Although there appears indorsed on the back of the blank form for proof of death, which was furnished by defendant, a request to accompany the proof with a copy of the proceedings had before the coroner, there is not a word contained in the certificate or by-laws

before us imposing such a duty upon the parties in interest. Indeed, nothing appears in the record, certificate or by-laws, or in any portion of the contract, indicating that the cause of death should be stated in the proofs or that the coroner's proceedings should be furnished therewith. In these circumstances, it is clear that if the guardian furnished a copy of the coroner's evidence and verdict at the instance of the defendant, he did so as an accommodation to it and not in performance of an act enjoined by the policy upon his wards. The court should have rejected the proof of death, the depositions of witnesses and the verdict of the coroner's jury attached for the reason stated, if for none other. Those documents were wholly incompetent as admissions against the infant beneficiaries.

But it is said even though the proof of death be rejected, the coroner's verdict and depositions given at the inquest are to be considered, independent of such proofs. We are not so persuaded. As to the depositions given by the witnesses at the coroner's inquest, it ought to be sufficient to say that every principle of natural justice points these should be excluded. *Ex parte* statements thus given without an opportunity being accorded an interested party to examine the witnesses fall within the rule against hearsay evidence, as we have always understood it. Indeed, it has been decided many times that depositions of witnesses before the coroner are not competent to be received in evidence even prima facie in litigation subsequently arising touching the subject-matter of the coroner's inquiry unless expressly authorized by statute. It is to be noted, however, that such depositions may be used for the purpose of contradicting a witness before the coroner who gives testimony in subsequent litigation touching the same subject-matter. [Pittsburg, etc., Ry. Co. v. Mc-Grath, 115 Ill. 172; Ins. Co. v. Schmidt, 40 Oh. St. 112; Knights Templar, etc., Co. v. Crayton (Ill.), 70 N. E. 1066.]

The only statute we have touching the matter of the preservation of the evidence taken before the coroner is section 6642, Revised Statutes 1899, Ann. St., sec. 6642, 1906. That section provides the evidence of the witnesses shall be preserved in writing and if it relates to the trial of any person being concerned in the death, it shall be returned to the court of the county having criminal jurisdiction along with the recognizance of witnesses to be taken. Nothing whatever in this statute indicates such depositions may be received in evidence for the purpose of establishing the cause of a death in any case.

The matter relating to the finding of the inquisition itself, that is, the verdict, is not so clear. It seems that under the common law in England the coroner's inquest was a court of record but it is not so regarded in this country. [5 Ency. Pl. and Pr., p. 38.] Although the coroner with us is a constitutional officer (sec. 10 and 11, Art. IX, Constitution of Missouri), nothing to be found in the Constitution indicates that an inquest held by him shall be regarded as a court of record. Indeed, our Constitution vests the judicial power of the state in the several tribunals enumerated in sections 1, 34, 35, 36 and 37 of article VI of the Constitution and among these the coroner is not mentioned. Judicial records, that is records of courts of competent jurisdiction, are conclusive between the parties and privies and as a general rule impart absolute verity (24 Am. and Eng. Ency. Law [2 Ed.], 193), but certainly such is not true of the record of the coroner's inquest, for, as to this, none are parties or privies, although the public may not be regarded as an entire stranger to such proceedings. [1 Greenleaf, Evidence (16 Ed.), sec. 556.] There can be no doubt that in so far as the coroner exercises his discretion with respect to determining whether or not an inquest should be held his acts necessarily are of a judicial character. So much and no more has been decided on this question

by our Supreme Court. [Boisliniere v. Board of Commissioners, 32 Mo. 375.] See also 7 Am. and Eng. Ency. Law (2 Ed.), 602. But aside from this, we have been unable to discover anything in our statutes according the force and effect of a judicial proceeding to such inquest. It is true sections 6642, 6643, R. S. 1899, Ann. St., secs. 6642, 6643, 1906, require a coroner's verdict to be in writing and to be signed by the jurors and the coroner as well. These sections do not say the verdict shall be used as evidence of any particular fact. The general rule in criminal matters is said to be that when the coroner's inquisition may be received as proof of the *corpus delicti* it is not to be considered to fix a crime upon the accused. [7 Am. and Eng. Ency. Law (2 Ed.), 612.] It is clear that no provision of our statute authorizes the reception of the coroner's verdict in evidence in civil litigation arising out of the subject-matter of the inquiry, for the purpose of proving the cause of death. There appears to be considerable conflict in the decisions on the question whether a coroner's inquisition or verdict is competent prima facie evidence to show the cause of the death of the insured. It appears that some of the cases accord high importance to such inquisitions in accordance with the common law doctrine which obtained in England, to the effect that they are proceedings of courts of record, while others are influenced to some extent by local statutes different from our own. U. S. Life Ins. Co. v. Kielgast (Ill.), 6 L. R. A. 65; Pyle v. Pyle (Ill.), 41 N. E. 999; Supreme Lodge v. Fletcher, 78 Miss. 377, are leading cases in support of the doctrine referred to. See also 4 Cooley's Insurance Briefs, pp. 3259, 3260. However, those courts admit the verdict as prima facie evidence only. Other courts of high authority have expressed grave doubt on the question as to whether or not the verdict should be considered even prima facie with respect to the cause of death. See Olwell v. Milwaukee Street Ry. Co., 92 Wis. 330; Metzradt v. Modern Brotherhood, 112 Ia. 522,

527. The better opinion on this question, especially when viewed in the light of our statutes, which accord no special prerogatives to such inquests or verdicts, seems to be that declared to be the correct rule by Judge Elliott in his valuable work on Evidence, volume 3, section 2390. In speaking of this matter, Judge Elliott says the correct rule undoubtedly is that such verdict is only admissible as a part of the proofs of death and is not to be considered as evidence by the jury in determining the question of the cause of the death of the insured. Such is the view expressed by many courts and it seems in conformity with sound principle, for in subsequent litigation over the subject-matter of the inquest, parties ought not to be embarrassed even prima facie by findings of fact against their interest in a proceeding to which they were not parties and over which they had no control. We believe, therefore, while such verdict is competent to be received in evidence as a part of the proof that the death of the insured occurred, it is not even prima facie competent as tending to prove the cause of such death and this is true when it is introduced by either party. This view is supported by the following cases in point: Cox v. Royal Tribe of Joseph (Ore.), 71 Pac. 73; Louis v. Connecticut Mut. Ins. Co., 58 App. Div. (N. Y.) 137; Dougherty v. Pac. Mut. Life Ins. Co., 154 Pa. 385; Goldschmidt v. Mut. Life Ins. Co., 102 N. Y. 486; Germania Life Ins. Co. v. Ross-Lewin (Colo.), 51 Pac. 488; Aetna Life Ins. Co. v. Kaiser (Ky.), 74 S. W. 203; Union Central Life Ins. Co. v. Hollowell, 14 Ind. 611; 3 Elliott on Evidence, sec. 2390; 4 Cooley's Insurance Briefs, 3260. See also in point, so far as the principle is concerned, Buffalo Loan Trust, etc., Co. v. Knights Templar, etc., Assn., 126 N. Y. 450.

Accepting such to be sound doctrine on the subject, it therefore appears that even the coroner's verdict, although in evidence, is not to be considered as to

the cause of the death of the insured. After excluding these matters which are found to be incompetent on the question of how the deceased came to his death, the other evidence in the record, tending to sustain the defense that insured came to his death as a direct result of his employment, is very meager, indeed. In this connection it is to be remembered that plaintiff's prima facie case is abundantly made by the proof and the burden is on the defendant to overcome it by showing the insured came to his death from a cause directly traceable to his occupation as a railroad brakeman or switchman. There can be no doubt that with these documents in the case, as admissions, and other proof, the evidence would seem to greatly preponderate in favor of the defense although not entirely conclusive on that score.

Aside from these documents, it appears that deceased was riding in a locomotive engine and the proof shows he was about the gangway between the cab of the locomotive and the tender. No one saw him standing there but he was seen to be in the act of falling as though he had occupied that position, but just what caused him to fall does not appear. Some of the witnesses say the insured was conscious immediately after he fell and others say he was unconscious at that time. The evidence is both ways as to this. It appears that he died about one and one-half hours after having fallen to the ground. All of the witnesses say that there were no indications on his body of external violence; that is to say, nothing to be found on the body indicated that he had been squeezed between the cab and the tender of the engine. The only marks were a few scratches on the face resulting from his fall upon the cinders adjacent to the track. The attending physician, whose certificate appears in the proof of death, to the effect that insured's skull was fractured, testified on the trial that he had overstated the fact in the proof of death as he actually found no fracture of the skull.

It seems the physician was misled by the circumstance that insured fell from the engine and assumed that his skull was fractured because it was clear to him that he was suffering from a hemorrhage of the brain. He gave testimony to the effect that he knew the insured died as a result of a hemorrhage of the brain and that this hemorrhage might result from natural causes or what is commonly known as a stroke of apoplexy, or it might result from a fracture of the skull; that the respiration of the insured and the pupils of his eyes indicated clearly that he was suffering from hemorrhage of the brain. The physician did not express the opinion that insured died from apoplexy neither did he express the opinion that the hemorrhage was occasioned by a fracture of the skull. The testimony might afford an inference either way on the subject. It is sufficient to say here, however, on the case made, the plaintiff was entitled to recover unless the defendant showed by competent evidence that insured's death was directly traceable to his occupation of railroad switchman or brakeman. And this burden it has failed to sustain beyond a reasonable inference to the contrary. In other words, after excluding as incompetent the proof of death, the depositions given before the coroner and the verdict of the coroner's jury, the evidence tending to prove that the insured came to his death from a casualty connected with his employment is in no sense conclusive as it must be to justify us in disturbing the verdict.

In this view, the judgment should be affirmed. It is so ordered. All concur.