## ROSIER v. METROPOLITAN LIFE INS. CO.

No. 31099.   April 16, 1946.

*168 P. 2d 302.*

Hughey Baker, of Tulsa, for plaintiff in error.

Coakley, McDermott & Gable, of Tulsa, for defendant in error.

DAVISON, J.  Plaintiff in error, wife of Ray R. Rosier, and beneficiary in an insurance policy issued by defendant in error on her husband's life, instituted this action to recover under the double indemnity clause of said policy.  The insured was found dead in his office on the night of August 30, 1937, from

a bullet wound inflicted by a revolver found in his hand.

In a former appeal a judgment for Mrs. Rosier was reversed on account of the trial court's erroneous instruction of the jury with reference to the burden of proof. See Metropolitan Life Ins. Co. v. Rosier, 189 Okla. 448, 117 P. 2d 793.

Upon a retrial, the insurance company prevailed and she has perfected this appeal. As the parties appear here in the same order as in the trial court, we will hereinafter refer to them by their trial court designations.

The case was submitted to the jury on the issues of whether or not insured's death was accidental, and whether plaintiff had furnished defendant proof of such a death as a prerequisite to recovery under the double indemnity clause, or whether subsequent to the death of the insured she had been relieved from furnishing such proof by the conduct of defendant company acting through its agents and employees.

Before discussing the latter issue, it should be noted that upon the particular proof of death transmitted to the home office of the defendant, said company paid (as shown in our former opinion, supra) the face amount of the policy but refused to pay any amount under the double indemnity feature.

The proof of death was in three parts, one of which was designated "No. 1 Claimant's Statement," another "No. 3 Identification Statement," and still another instrument in the form of a statement from one H. H. Cullison, the county investigator. In the "Claimant's Statement" the cause of insured's death was termed "self-inflicted gunshot wound, accidental or otherwise," while in the county investigator's statement it was said to be "suicide." These documents were submitted to the defendant company together, before it paid plaintiff the face amount of the policy, and as far as the record shows, no other or further evidence or proof as to the cause of insured's death was

requested or furnished before this action was commenced.

At the trial, to show that proof of death had been duly furnished the company, plaintiff's counsel introduced as her exhibit No. 1 the "Claimant's Statement" above described, but omitted the other parts of the proof transmitted to the company above noted, and objected to defendant's introduction of the county investigator's statement, as its exhibit No. 1. It is the trial court's allegedly erroneous admission of this instrument which comprises the first of plaintiff's two assignments of error.

Defense counsel says that the documentary proof of death usually required by his client is in three parts and it was shown that, in this instance, the county investigator's statement was substituted for a physician's or coroner's report as part No. 2 of such proof, because here no physician or coroner was ever called to examine the insured or investigate the cause of his death. Plaintiff's counsel contends that exposing Cullison's statement to the view of the jury was highly prejudicial to the rights of his client and cites many cases to the effect that such a statement is never admissible on the issue of cause of death in a case like the present one. Defendant takes no issue with these cases, but points out that the exhibit in question was not introduced on that issue but merely upon the issue of whether or not it had received proof of the insured's accidental death, so as to warrant, under the terms of the policy, claim and payment of double indemnity. Obviously, there is reason founded upon justice and orderly procedure for admitting such evidence. It could well be said that to give such issue unbiased and thorough consideration, the jury was entitled to know, not just a part, but all of the data submitted to the company as a proof of death in order to decide whether or not all of the conditions had been fulfilled to entitle plaintiff to recover on the double indemnity provisions of the policy. Under the contract involved, the company was not obligated to make this addi-

tional payment until it received "due proof" that the insured's death was the result of "injury sustained through external, violent and accidental means" rather than as "the result of self-destruction." On the other hand, it can readily be seen that in a case like the present one, the jury might easily be influenced in determining the cause of the insured's death by what appears on that subject in such an instrument. Generally, proofs of death are admissible, when offered on the issue upon which they were received in this case, even though they may reveal someone's opinion as to the cause of the death. Pomorskie v. Prudential Ins. Co. of America, 318 Pa. 185, 177 Atl. 783; American Central Ins. Co. v. Wellman (Tex. Civ. App.) 5 S.W. 2d 550; Webster v. New York Life Ins. Co., 160 La. 854, 107 So. 599; Childers v. National Life & Accident Ins. Co. (Mo. App.) 37 S.W. 2d 490; Heiman v. Pan American Life Ins. Co., 183 La. 1045, 165 So. 195; Equitable Life Assur. Soc. v. Sieg, 53 Fed. 2d 318; Leman v. Life Ins. Co., 46 La. Ann. 1189, 15 So. 388, 24 L.R.A. 589, 49 Am. St. Rep. 348; Queatham v. Modern Woodmen of America, 148 Mo. App. 33, 49, 127 S.W. 651, 655; 29 Am. Jur. 1115; 37 C.J. 632, et seq. In the present case plaintiff's rights do not appear to have been prejudiced by the introduction of the evidence in question. When defense counsel offered it he announced that it was offered, not as proof of the facts therein detailed, but for the sole purpose of showing what was furnished the defendant as proof of Rosier's accidental death. Thereupon the trial judge advised the jury that he was admitting said exhibit only for this purpose. Plaintiff's counsel excepted to these remarks and instructions, but never before the case was submitted to the jury did he request that the jury be given any other or further instruction as to such evidence. It is difficult to see how more precaution might have been taken to prevent the jury from considering the county investigator's statement on the issue of whether the death was suicide or accidental and there is no indication in the record that the jury disregarded this instruction and so considered it. There was other sufficient evidence upon which it might very well have concluded that Rosier committed suicide. There being no eyewitnesses to the tragedy, all of the evidence was necessarily circumstantial. But certain undisputed facts pointed to suicide. As hereinbefore noted, the insured's fatal wound was inflicted by a gun in his own possession. It was found in his hand when his body was discovered alone in his office by a janitress who entered it in the regular course of her cleaning duties about 9:30 o'clock at night. He was slumped over in his chair at his desk. It appears that he had remained in his office alone after regular office hours and there was no evidence whatsoever to indicate that anyone else had thereafter been there with him, until his lifeless body was discovered. There was proof of a motive for suicide in other undisputed evidence tending to show that Rosier had been suffering certain financial reverses and that his assets were steadily diminishing. Records of his accounts revealed sizable current withdrawals to help finance unsuccessful oil and gas drilling operations and the fact that books and checks were found open on his desk when his body was discovered there would indicate that he had probably been giving such matters consideration just previous to his death. One witness testified that prior to Rosier's death he had taken to drinking heavily, and further testified, without contradiction, that he had often expressed himself about his finances, that they were in bad shape, and that he did not know what he was going to do. On behalf of plaintiff, it was sought to show that the gun which ended Rosier's life would go off accidentally with the safety on, but efforts of witnesses to substantiate this claim by demonstrations before the jury met with little, if any, success. Thus it will be seen that there was competent evidence indicating that the insured's death was suicide without consideration of what the county investigator's statement said about it.

Plaintiff's counsel calls attention to the fact that the county investigator's report was submitted as a part of the proof of death at the instance of one of the agents of the defendant company, and there is evidence indicating that one or more of its agents did have something to do with its being procured, but the trial court, taking cognizance of such evidence, gave the jury very liberal and complete instructions, under which, had it found the evidence sufficient, it might have decided that plaintiff should recover without having herself furnished any proof of death.

It would, of course, be absurd for us to venture an opinion as to whether the jury actually gave any weight to the investigator's statement in arriving at its conclusion, on the other principal issue in the case. It is always a matter of more or less speculation how the evidence in any case will be received and considered in the minds of the jurors, and especially is this true in a case like the present one where the two main issues are so closely related. However, it should suffice to say here that from an examination of the record it appears that in this case the trial court took every precaution to prevent the jury from giving the investigator's statement any weight in deciding whether or not the insured's death was in fact accidental, and also that there was sufficient basis in other competent evidence introduced on that issue alone for a finding and conclusion that the death was a suicide rather than accidental. Under such circumstances, even though the admission of the questioned evidence was error, it would be considered harmless and no cause for reversal. See cases cited in 2 Okla. Dig., under "Appeal and Error," Key No. 1051 (1), 1053 (2).

The only other proposition presented for reversal is that the trial court erred in giving its instruction No. 3, which, omitting the formal parts, reads as follows:

"You are instructed that if you find that the facts proved are equally consistent with suicide as with accidental death, then in that event your verdict shall be for the defendant."

It seems to be the opinion of plaintiff's counsel that under this instruction, if the jurors, after considering the evidence, found themselves in doubt as to whether the insured's death was suicide or accidental, they would be compelled to indulge in a presumption that it was suicide, and he cites many cases for the proposition that, in such instances, there is never a presumption in favor of suicide. We believe we have sufficiently expressed our views on the subject of "the presumption against suicide" in cause No. 30914, Prudential Insurance Company of America v. Foster, 197 Okla. 39, 168 P. 2d 295, to demonstrate our agreement with counsel that there is never a presumption in favor of suicide, but we also made it clear that when there is evidence of suicide, the presumption against it does not relieve the plaintiff in cases like these of the burden of proving the death was accidental. In our opinion a fair appraisal of the instruction under consideration here does not support counsel's conclusion that it compelled the jury to presume that Rosier's death was suicide. We think it can only be considered as but another way of telling the jury that the burden was on plaintiff to establish her case by a preponderance of the evidence. It did not rule out the jury's consideration of the human truth that ordinarily a man will not deliberately take his own life. It only told them in effect that if after weighing the evidence with the reasonable inferences to be drawn therefrom, the proven facts appeared to them as consistent with the proposition that Rosier committed suicide as with the proposition that his death was accidental, then they must find for the defendant. Because of the confusion, referred to in the Prudential Case, supra, that has so often arisen in attempts to apply the so-called "presumption against suicide," the instruction in question might very helpfully have been more complete and have covered the subject more thoroughly. How-

ever, though perhaps not a model to be followed in this type of case, we find that, as an abstract statement, it is not erroneous nor can it be considered sufficiently confusing in the present case to constitute ground for reversal. The instructions, when considered as a whole, were clear and complete, and, as we have seen, the evidence was such that the jury might reasonably have based its verdict either upon the conclusion that the insured's death was not accidental or that no proof of accidental death was ever received by the company. Under these circumstances it has not been established that the rights of plaintiff were prejudiced by the giving of instruction No. 3, and the verdict and judgment will therefore not be reversed on account of such alleged error. Reinhart & Donovan Co. v. Williamson, 191 Okla. 539, 131 P. 2d 765; Drum Standish Commission Co. v. First Nat. Bank & Trust Co. of Oklahoma City, 168 Okla. 400, 31 P. 2d 843, and other cases cited in 2 Okla. Dig. under "Appeal and Error," Key No. 1064 (1) and 14 Okla. Dig. under "Trial," Key No. 295 (1) (2).

As we have found no ground for reversal in either of the two assignments of error presented, the verdict and judgment is hereby affirmed.

GIBSON, C.J., HURST, V.C.J., and OSBORN, BAYLESS, and ARNOLD, JJ., concur. RILEY, WELCH, and CORN, JJ., dissent.