FEDERAL LIFE INS. CO. v. MAPLES.

No. 33861.   Feb. 27, 1951.

*228 P. 2d 363.*

Kerr, Lamber, Conn & Roberts, Ada, for plaintiff in error.

Long & Long, Ada, for defendant in error.

HALLEY, J.  The parties will be referred to in the positions they occupied in the lower court. Calvin B. Maples took out a policy of life insurance with the defendant on the 10th day of September, 1942, at Holdenville, Oklahoma, and his wife, the plaintiff, Erma J. Maples, was made beneficiary. The policy was for $3,000 and provided for waiver of premium and double-indemnity benefits. On the 26th day of November, 1944, while residing in San Francisco, California, Calvin B. Maples died. The insurance company paid on the life insurance contract, but re-

fused to pay the $3,000 provided for under the double-indemnity provision. The plaintiff brought suit on the contract.

The evidence showed that on the 25th day of November, 1944, at about 5 o'clock p.m., Calvin B. Maples returned from his work as a radio technician with the Matson Navigation Company, to his place of residence in San Francisco; that he was then in good health; that he changed clothes, and about 6 o'clock left his home in his car with the avowed intention of getting some gasoline for the purpose of hauling some of his fellow-employees to work the next day. That about 12 o'clock midnight of the same day, he returned home; was pale; looked like someone who had been drinking; and that the plaintiff detected "an odor". That the plaintiff then discovered that her husband had an injury at the back of his head, which was bleeding. That her husband did not know how he had been hurt and did not know that he was bleeding. The plaintiff cleaned the wound, which she stated was about the size of her little fingernail, at the base of the brain on the back of the neck; her husband went on to bed, and plaintiff only noticed his getting up once in the night. That about 9:30 the next morning she found him lying unconscious on the floor. She called a doctor, who arrived about 1:15 p.m. Her husband was taken to the hospital, where he died about 15 minutes after being admitted. The deceased's wallet was missing when he arrived at home, and was later found near 29th and Sanchez streets in the city of San Francisco, which was more than a mile and a half from his home. About $9 in money and a gasoline ration book were missing from the wallet. No evidence was offered by either plaintiff or defendant as to how the deceased met his death. The plaintiff testified at the trial that her husband died as a result of the wound at the base of his brain. She had had 2 1/2 years as an undergraduate nurse, and had made considerable study of head wounds after her husband's death.

The defendant offered the testimony of two police officers of the city of San Francisco who had made an investigation of the case. One of them did not see the deceased before his death, but the other officer did. Neither testified as to any facts concerning the death of the deceased. The defendant offered the deposition of Dr. John J. Kingston, the coroner of San Francisco county. There were also offered in evidence five exhibits by the defendant: Exhibit 1, being Proof of Death; Exhibit 2, certified copy of Death Record; Exhibit 3, photostatic copy of Death Certificate; Exhibit 4, testimony of plaintiff, which was part of her testimony at the trial of a previous case; and Exhibit 5, transcript of the testimony at the coroner's inquest. None of these exhibits were admitted by the trial court.

The defendant has raised six propositions: (1) that the court erred in admitting incompetent testimony as to cause of death; (2) that the plaintiff failed to make out a prima facie case; (3) that the court erred in refusing to admit Exhibits 1, 2, and 3 offered by defendant; (4) that where competent evidence is offered and objection thereto is sustained, a court of review will consider the same as if the evidence has been admitted; (5) that the court erred in refusing to instruct a verdict for the defendant; and (6) that the court erred in permitting a recovery for a greater amount than was due under the terms of the policy.

We think that Propositions 1, 2, and 5 can be considered together. Under the provisions of the policy, which we set out:

" . . . Hereby agrees, that if the Insured shall, during the premium paying period of the policy, and prior to the anniversary date of said Policy nearest to the sixtieth birthday of the Insured and while no premium is in default on said Policy, this Supplemen-

tary Contract being in force, *sustain bodily injury effected directly through external, violent and Accidental means exclusively and independent of all other causes,* which shall within ninety days of the event causing the accident, result in the death of the said Insured, the Company in case of such accidental death will pay the beneficiary under said Policy upon surrender of such Policy and this Supplementary Contract $3,000.00 in addition to the amount payable under said policy and in one sum unless otherwise stipulated, upon receipt at the Home Office of the Company in the City of Chicago of due proof of such accidental death.

"The benefit under this Supplementary Contract shall not be payable if the death of the Insured resulted directly or indirectly from: suicide, whether sane or insane, or any attempt thereat; infirmity of mind or body; sickness or disease; the taking of poison or inhaling of gas (including carbon monoxide) whether voluntary or otherwise; committing an assault or felony; war, or any act incident thereto; engaging in riot or insurrection; riding or being in or on any aerial device or conveyance, or any submarine; *homicide intentional or unintentional,* or any attempt thereat; any bacterial infection other than that occurring in consequence of any accidental and external bodily injury, . . ." the burden rested upon the plaintiff to prove that her husband sustained a bodily injury effected directly through external, violent and accidental means, exclusively and independent of all other causes. We have held in several cases that if it is shown that the bodily injury causing death was external and violent, it will be presumed that it was accidental. The evidence shows clearly that this man suffered a head injury, which was external and violent, from which he subsequently died, and with this presumption that the same was accidental, the plaintiff made her case sustaining that. Prudential Life Ins. Co. v. Tidwell, 163 Okla. 39, 21 P. 2d 38; Standard Accident Ins. Co. v. Baker, 145 Okla. 100, 291 P. 962; Penn Mutual Life Ins. Co. v. Spaulding, 50 Okla. 307, 150 P. 494.

With the state of the record as it was when the plaintiff closed her case, it was incumbent upon the defendant to come forth with its evidence to show that the death of the deceased was not, as it alleges, from accidental causes; and when it offered no competent evidence on this point, it is in no position to claim that the plaintiff did not make a case.

Propositions 3 and 4 will be considered together. The defendant desired to introduce the proof of death that the plaintiff sent to the defendant in order to establish her claim to the insurance, and in that proof of death was a statement by the physician, whom she called to treat her husband just before his death, to the effect that her husband died from "homicide"; but there was no evidence whatsoever that the examining physician had any information of any kind as to how the deceased received the blow on his head. It was purely a conclusion on his part, and was of no probative value, and the trial court committed no error in excluding that evidence. This statement by the doctor was not made for the purpose of establishing the manner in which the deceased met his death, but was only to show that he actually was dead. In some jurisdictions, the statement of the doctor under similar circumstances is considered admissible against the plaintiff on the theory that it is admission against interest. We think that this is not the correct construction to be placed upon such an instrument. It was necessary, in order for the plaintiff to obtain her money on the insurance policy, that she offer this proof of death. There was a statement contained therein by the doctor which was not based on fact, but was wholly his conclusion and was of no probative value. We held in New York Life Insurance Co. v. Gibbs, 176 Okla. 535, 56 P. 2d 1179, that a finding by a coroner's jury that a person came to his death by a wound inflicted by himself with suicidal intent is not admissible in an action upon a policy of

insurance providing for double indemnity in case of accidental death; and we also held in Metropolitan Life Insurance Co. v. Plunkett, 129 Okla. 292, 264 P. 827, that an ex parte statement of the attending physician that the death of the insured was caused by suicide, contained in the proof of death, was not sufficient to put upon the beneficiary the burden of proving that the insured did not commit suicide; and in this case we think that the ex parte statement of the attending physician, contained in the proof of death, that the death of the insured was caused by homicide, was not sufficient to put upon the beneficiary the burden of proving that the insured did not die by homicidal means. In Laury v. Northwestern Mutual Life Ins. Co., 180 Minn. 205, 230 N. W. 648, it was held that hearsay statements in proof of death by physicians were properly excluded. To the same effect are Ziolkowski v. Continental Casualty Co., 263 Ill. App. 31, and Life & Casualty Co. v. Robertson, 6 Tenn. App. 43.

This case is readily distinguishable from Rosier v. Metropolitan Life Ins. Co., 197 Okla. 35, 168 P. 2d 302, cited and relied upon by the plaintiff in error. In that case the defendant raised the question that the beneficiary had not filed with the company the necessary and proper proof to fulfill the proper predicate to entitle her to recover on the double indemnity feature of the policy. When the proof of the county investigator was offered in evidence, over the objection of the beneficiary, counsel for the insurance company announced that the statement was offered not as proof of the facts therein set forth as to the cause of death of the insured, but for the sole purpose of showing what was furnished the insurer as proof of the insured's death. The trial judge then admonished the jury that he was admitting said exhibit only for the latter purpose. The trial court took extreme precaution to prevent the jury from considering the county investigator's statement on the issue of whether the death was by suicide or accidental means.

We realize that there are numerous cases to the effect that these statements in the proof of death are admissible, but an analysis of the great bulk of them will show that a statement was made by a physician as to the kind of disease or injury that brought about the death, and not as to whether it was homicide or suicide. To know, in this case, how the deceased received the injury that caused his death would require the testimony of an eyewitness, because the injury was of the type which could have been incurred either accidentally or intentionally; and it would be necessary to show, in order to exempt the defendant from liability under the facts in this case, that death resulted from homicide, whether intentional or unintentional.

All the exhibits which the defendant offered on this issue were inadmissible for the reason that they were based on hearsay and conclusion.

On Proposition 6, we think that the trial court erred in permitting recovery of a greater amount than was due under the terms of the policy. Plaintiff was only entitled to collect on the monthly payments which were due under the policy up until the time she brought her suit, and then to a judgment for the balance due under the policy.

The judgment will be modified to the extent that all monthly payments which are not now due will be payable monthly, as provided in the policy; and the judgment, as hereby modified, is affirmed.

WELCH, CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur. ARNOLD, C.J., concurs in result.